UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

JeDAWN KENNEDY,
                             Plaintiff,

      v.

DAVID BERNHARDT,[1]
Secretary of the United States Department
on Interior,
                             Defendant.
_____

**REPORT
and
RECOMMENDATION**

**18-CV-647V(F)**

APPEARANCES:        THE TARANTINO LAW FIRM, LLP
                       Attorneys for Plaintiff
                       KEVIN P. WICKA, of Counsel
                       1500 Rand Building
                       14 Lafayette Square
                       Buffalo, New York 14203

                       JAMES P. KENNEDY, JR.
                       UNITED STATES ATTORNEY
                       Attorney for Defendant
                       MICHAEL S. CERRONE,
                       Assistant United States Attorney, of Counsel
                       Federal Centre
                       138 Delaware Avenue
                       Buffalo, New York  14202

## JURISDICTION

This matter was referred to the undersigned by Order of Hon. Lawrence J.

Vilardo for all pretrial matters on September 7, 2018 (Dkt. 8).  It is presently before the

court on Defendant's motion to dismiss, in part, filed September 6, 2018, pursuant to

Fed.R.Civ.P. 12(b) and 12(f).  Dkt. 5.

_____

[1] David Bernhardt became Secretary of the Interior on January 2, 2019, and pursuant to Rule 25(d) of the Federal Rules of Civil Procedure is automatically substituted for Ryan Zinke as the defendant in this suit with no further action required to continue the action.

1

**BACKGROUND**

In her Complaint, filed June 6, 2018, Plaintiff alleges five causes of action including violations of § 702(a) of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2(a) ("Title VII") and 42 U.S.C. § 2000e-16(a) (prohibiting employment discrimination by federal agencies) for employment discrimination based on Plaintiff's sex ("First Cause of Action"); a hostile work environment claim based on sexual harassment of Plaintiff by a co-worker in violation of Title VII and 42 U.S.C. §§ 2000e-16(a), ("Second Cause of Action"); retaliation based on Defendant's adverse employment action against Plaintiff on account of Plaintiff's complaints of Defendant's sexual employment discrimination and Defendant's maintenance of a sex-based hostile work environment in violation of Title VII, 42 U.S.C. §§ 2002e-3(a), 2000e-16(a) and 2000e-16(d) ("Third Cause of Action"); Defendant's failure to provide a reasonable accommodation to avoid aggravation of Plaintiff's alleged post-traumatic stress syndrome (P.T.S.D.) disability in violation of Section 501 of the Rehabilitation Act, 29 U.S.C. §§ 794a(a)(1), 42 U.S.C. §§ 2000e-16(a), 1981a(a)(2) ("Fourth Cause of Action"); and Defendant's retaliation against Plaintiff for complaining of Defendant's unlawful discriminatory practices with respect to Plaintiff's alleged P.T.S.D. disability in violation of Section 501 of the Rehabilitation Act, 29 U.S.C. §§ 791, 794(a) ("Fifth Cause of Action") (collectively "the Causes of Action"). Plaintiff seeks money damages in the amount of $3 million as compensation under the Fifth Cause of Action, back pay, front pay and related benefits, as well as lost employment opportunities, mental anguish, emotional distress, embarrassment and pain and suffering, along with injunctive relief, costs and attorneys fees pursuant to 29 U.S.C. § 794(a), 42 U.S.C. § 1981(a)(b), § 2000e-5, under all of the Causes of Action. Plaintiff also seeks punitive damages under

all the Causes of Action pursuant to 42 U.S.C. § 1981a(a), (b).  Defendant's motion to

dismiss in part was filed on September 6, 2018 (Dkt. 6) ("Defendant's motion") with

Declaration of Michael S. Cerrone, and attaching as Exhibit A Plaintiff's EEO

Administrative Complaint dated August 15, 2017 (Dkt. 7) ("Defendant's Exh. A" or the

"Administrative Complaint").  On October 15, 2018, Plaintiff filed the Declaration of

Kevin P. Wicka (Dkt. 10) attaching as Exhibit A a Report of Investigation on Plaintiff's

EEO Administrative Complaint conducted by the Fish and Wildlife Service of the

Department of Interior dated November 15, 2017 (Dkt. 10-1) ("Plaintiff's Exh. A"),

together with Plaintiff's Memorandum Of Law In Opposition To Defendant's Motion To

Dismiss (Dkt. 10-1) ("Plaintiff's Memorandum").  On October 29, 2018, Defendant filed

Defendant's Reply Memorandum Of Law In Further Support Of Motion To Dismiss (Dkt.

11) ("Defendant's Reply").  Oral argument was deemed unnecessary.


## FACTS[2]

Plaintiff, who allegedly suffers from a P.T.S.D. condition, commenced

employment in 2015 with the Lower Great Lakes Fish and Wildlife Conservation Office

of the Fish and Wildlife Service, U.S. Department of Interior at offices located in Basom,

New York in this district ("the Agency"), as an administrative officer.  In May 2016, the

Agency hired one Shawn Grube as a maintenance worker ("Grube") who shortly

thereafter began to engage in unnecessary visits to Plaintiff's office and improper

conversations with Plaintiff and a female co-worker, who also worked in Plaintiff's office,

regarding his lack of sexual relations with his wife and his need for such activity with

someone else.  The Agency's Maintenance Department was housed in another building

---

[2] Taken from the pleadings and papers filed in this action.

3

but Grube was assigned to a work station located in Plaintiff's building on the grounds of

the Agency providing Grube with greater access to Plaintiff's office.  Plaintiff alleged

Grube's sexually colored comments were directed to Plaintiff and others throughout the

period of Grube's employment at the Agency which ended at the end of May 2017.

Grube also made favorable comments to Plaintiff about her appearance and extended

repeated lunch invitations to Plaintiff, which Plaintiff declined.  Grube repeatedly

pestered Plaintiff with unwelcome non-work related telephone calls to her at home on

her personal cell phone number which he obtained from Agency records.[3]  In October

2016, during a visit to Plaintiff's office, Grube, without permission, touched Plaintiff's

shoulder with his hand to which contact Plaintiff objected to.  According to Plaintiff,

Grube also engaged in similar unwelcome conduct with other employees at the

Agency's offices including a male co-worker.  Beginning in December 2016, Grube

commenced repeatedly texting Plaintiff on her personal cell phone.  In April 2017, Grube

called Plaintiff several times during non-working hours; Plaintiff told Grube to stop such

calls.  Plaintiff complained, throughout the one-year period Grube was employed at the

Agency, about Grube's conduct to Michael Goehle, the Agency's Deputy Complex

Manager and Plaintiff's supervisor ("Goehle"), and on May 3, 2017 indicated to Goehle

that Grube's conduct, which Plaintiff perceived as sexually motivated, was aggravating

Plaintiff's P.T.S.D., however, Goehle failed or refused to take any action responsive to

Plaintiff's complaints.  On May 9, 2017, upon learning her office-workmate would be

absent from work that day, Plaintiff requested Goehle permit Plaintiff to take personal

leave, use flex-time, or work on-line from home ("telework"), to avoid any potential

---

[3] Plaintiff does not allege the Agency improperly facilitated Grube's access to this information.

contact with Grube on that occasion, which request was denied by Goehle.  Later that day, Plaintiff informed Goehle that Grube had, as Plaintiff feared, again visited Plaintiff's office during the work day four times on non-work related matters and lingered there unnecessarily near Plaintiff's desk for five minutes while Plaintiff was providing assistance to other employees.  On May 12, 2017, Plaintiff reported to Goehle Grube's further harassment of Plaintiff, involving 10 unnecessary visits to Plaintiff's office on May 10th and 11th, was causing an aggravation of Plaintiff's P.T.S.D.[4] to which complaint Goehle did not respond.  Prior to May 12, 2017, Plaintiff complained in writing to Goehle about Grube's alleged harassment requesting she be granted telework privileges and that Grube be transferred to a different work station located in the Agency's Maintenance Department's building, given that he was assigned to that department, as an accommodation to mitigate the stress Plaintiff was then experiencing because of Grube's repeated misconduct.  Plaintiff alleges Goehle failed to respond to this request and that Grube's work station remained in Plaintiff's building at the Agency with physical proximity to Plaintiff's office.

Plaintiff further alleges that following her repeated complaints to Goehle concerning Grube, in May 2017, Goehle conducted an Agency staff meeting in groups of eight employees to review the Agency's sexual harassment policies with Plaintiff being assigned to the same group as Grube, which assignment Plaintiff saw as highly improper in view of Plaintiff's prior complaints regarding Grube harassment.  On May 15, 2017, Plaintiff requested Agency EEO assistance to address Grube's alleged

---

[4] According to Plaintiff's Administrative Complaint, filed August 15, 2017, Defendant's Exh. A, Plaintiff's P.T.S.D. is based on a prior sexual trauma suffered by Plaintiff, Dkt. 7 ¶ 19, of which Goehle was previously made aware.  *Id.* ¶ 20.  Plaintiff does not object to the court's consideration of Defendants Exh. A.

harassment directed to Plaintiff and Goehle's failure to take corrective steps against Grube and informing Goehle of her request. Plaintiff alleges that, thereafter, on May 17, 2017, Grube verbally greeted Plaintiff while walking in a narrow office hallway in "a taunting manner" causing Plaintiff to "feel unsafe" which incident Plaintiff also reported to Goehle. According to Plaintiff, Goehle responded to Plaintiff with the "suggestion" that Plaintiff take care not to provide "mixed messages to Grube" and cautioned Plaintiff not to "lure Mr. Grube into wanting to have a conversation." Plaintiff alleges that following Plaintiff communicating to Goehle her complaints regarding Grube's improper conduct toward her, Goehle avoided further contact with Plaintiff including by shutting his office door. Plaintiff alleges Goehle responded to the male co-worker, who had also complained to Goehle about improper contacts from Grube of a sexual nature, differently than Goehle treated Plaintiff, allowing the male co-worker's use of flex-time to avoid potential contact with Grube during working hours at the Agency. Grube subsequently resigned from the Agency on May 31, 2017. Plaintiff's Administrative Complaint alleging employment discrimination against the Agency was filed August 15, 2017; following its investigation, the Agency dismissed Plaintiff's Administrative Complaint on March 8, 2018. This action was commenced on June 6, 2018.

## DISCUSSION

1.  <u>Motion to Dismiss</u>.

    To survive a motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6) ("Rule 12(b)(6)"), a complaint, "must contain sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 566 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007)). "A claim will have 'facial

plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Sykes v. Bank of America*, 723 F.3d 399, 403 (2d Cir. 2013) (quoting *Iqbal*, 556 U.S. at 678); *see Twombly*, 550 U.S. at 570 (the complaint must plead "enough facts to state a claim to relief that is plausible on its face").  The complaint's factual allegations "must be enough to raise above the speculative level on the assumption that all the allegations in the complaint are true." *Twombly*, 550 U.S. at 570.  *See Biro v. Condé Nast*, 807 F.3d 541, 544 (2d Cir. 2015) (reviewing motion to dismiss under 12(b)(6), "accepting as true the factual allegations in the complaint and drawing all inferences in the plaintiff's favor").

The "plausibility standard" applicable to a Rule 12(b)(6) motion to dismiss "is guided by '[t]wo working principles.'" *Harris v. Mills*, 572 F.3d 66, 71 (2d Cir. 2009) (citing *Twombly*, 550 U.S. at 544 (2007), and quoting *Iqbal*, 566 U.S. at 678).  "First, although 'a court must accept as true all of the allegations contained in a complaint,' that 'tenet' is inapplicable to legal conclusions,' and '[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.'" *Id.* at 72 (quoting *Iqbal*, 556 U.S. at 678).  "'Second, only a complaint that states a plausible claim for relief survives a motion to dismiss,' and '[d]etermining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* (quoting *Iqbal*, 556 U.S. at 679).  Unless the plaintiff pleads "enough facts to state a claim that is plausible on its face" so as to "nudge[ ] their claims across the line from conceivable to plausible, [the] complaint must be dismissed." *Twombly,* 550 U.S. at 570.

In ruling on a motion to dismiss pursuant to Rule 12(b)(6), "a court may consider the complaint as well as 'any written instrument attached to [the complaint] as an exhibit

or any statements or documents incorporated in it by reference. *Kalyanaram v. American Ass'n of University Professors at New York Institute of Technology, Inc.,* 742 F.3d 42, 44 n. 1 (2d Cir. 2014) (quoting *Yak v. Bank Brussels Lambert*, 252 F.3d 127, 130 (2d Cir. 2001)). A court may also consider "matters of which judicial notice may be taken, [and] documents either in plaintiff's possession or of which plaintiffs had knowledge and relied on in bringing suit.'" *Id.* (quoting *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002)).

In this case, Plaintiff requests that the court, in evaluating the Complaint, take judicial notice of Plaintiff's Exh. A (Dkt. 10-1), the Department of Interior Fish and Wildlife Service's Report of Investigation, dated December 8, 2017, conducted by EEO Investigator Valli Mittner in response to Plaintiff's EEO Administrative Complaint ("the EEO Investigative Report"). Dkt. 10 ¶ 4. Defendant did not respond to this request. *See* Dkt. 11 (*passim*). Although caselaw supports consideration of administrative records and reports as a matter of judicial notice, as well as documents that are integral to a plaintiff's employment discrimination case, to establish facts relevant to plaintiff's claims and to a defendant's motion pursuant to Rule 12(b)(6), *see Colvin v. State Univ. College at Farmingdale*, 2014 WL 2863224, at *16 (E.D.N.Y. June 19, 2014) (sustaining use of defendant's performance evaluations and outcomes of prior administrative determinations, in court's consideration of defendant's motion to dismiss pursuant to Rule 12(b)(6), which were not included in plaintiff's judicial complaint) (citing caselaw), *reconsideration denied*, 2015 WL 2213297 (E.D.N.Y. May 8, 2015), here, the EEO Investigative Report is not a decision of an administrative body such as the EEOC nor is there any indication that the document itself is integral to Plaintiff's claims in that the Complaint "relies heavily" upon the EEO Investigative Report. *Id.* Instead, in the instant

case, the Complaint makes no reference to the Agency's EEO Investigative Report, and Plaintiff's Memorandum includes only three references to it in support of Plaintiff's assertion that Goehle disparately treated Plaintiff based on her sex by approving her male co-worker's request for an altered work schedule to avoid Grube's unwelcome physical contacts.  *See* Dkt. 10-2 at 3 (referencing Plaintiff's Exh. A at Bates No. 00212-213); Dkt. 10-2 at 10 (same); Dkt. 10-2 at 11 (same), an issue which is the subject of Plaintiff's Complaint. *See* Dkt. 1 ¶ 48.  Nor does Plaintiff's counsel assert reliance on the Investigative Report in counsel's preparation of the Complaint.  *See* Dkt. 10 (*passim*).  Moreover, according to the Report's Index, the Investigative Report, as submitted to the court by Plaintiff, appears incomplete in that a number of underlying documents, particularly witness affidavits, are not included in Plaintiff's Exh. A.  *See* Dkt. 10-1 at 24-28.  Accordingly, the court declines to rely on Plaintiff's Exh. A in its consideration of Defendant's motion.

> A.    <u>Punitive Damages</u>.

Plaintiff's claims for discrimination based on disparate treatment and a hostile work environment, retaliation and failure to accommodate are alleged under Title VII and the Rehabilitation Act.  In addition to compensatory damages, Plaintiff seeks punitive damages on these claims.  However, it is settled that punitive damages are not available in Title VII or Rehabilitation Act claims brought against the federal government. *See Terry v. Ashcroft*, 336 F.3d 128, 153 (2d Cir. 2003) (punitive damages not available against federal government in Title VII cases); *Lengen v. Dep't of Trans.*, 903 F.2d 1464, 1468 (11th Cir. 1990) (Rehabilitation Act does not provide for punitive damages in action against federal government); *Burns v. Potter*, 2008 WL 630871, at *2 (S.D.Ohio Mar. 7, 2008) (citing 42 U.S.C. § 1981a(b)(1)); *report and recommendation adopted* 2008 WL

630871 at *1 (S.D. Ohio Mar. 7, 2008). Where a claim is explicitly excluded by statute, it cannot plausibly allege a valid claim for relief. *See Oliver v. U.S. Bancorp,* 2015 WL 4111908, at *4 (S.D.N.Y. July 8, 2015) (dismissing pursuant to Fed.R.Civ.P. 12(b)(6) for failure to state a claim for plausible relief plaintiff's claim against defendant debt collector where documents on which plaintiff relied as establishing "initial communication" were, under relevant statute, explicitly specified as not constituting an initial communication).   In this case, Plaintiff has, since receiving Defendant's motion papers, agreed to withdraw her claim for such damages (Plaintiff's Memorandum, Dkt. 10-2, at 2) ("Plaintiff withdraws her claims for punitive damages.").   Accordingly, Defendant's motion should be GRANTED as to Plaintiff's request for punitive damages asserted under all Causes of Action.  Alternatively, treating Defendant's motion with respect to this issue as one pursuant to Fed.R.Civ.P. 12(f) (motion to strike improper pleadings), *see Hirsh v. Complex Media, Inc.*, 2018 WL 6985227, at *8-10 (S.D.N.Y. Dec. 10, 2018) (denying motion to dismiss under Fed.R.Civ.P. 12(b)(6), as well as under Fed.R.Civ.P. 12(f)), Defendant's motion should also be GRANTED.

  B.    Failure to Exhaust Administrative Remedies.

    1.    First Cause of Action (Disparate Treatment.

  Because Title VII claims of employment discrimination, such as Plaintiff's claim of disparate treatment and employment discrimination, based on sexual harassment by co-worker based on her sex as stated in Plaintiff's First Cause of Action,[5] against the

---

[5] Plaintiff's First Cause of Action appears to include two grounds for Plaintiff's Title VII claim.  Specifically, Plaintiff alleges disparate treatment based on her sex (Dkt. 1 ¶¶ 49, 50) particularly that arising from Goehle's more favorable actions in response to a male co-worker's complaints about Grube, *see* Dkt. 1 ¶ 48, and based on Grube's sexual harassment of Plaintiff and Defendant's corresponding failure to protect Plaintiff from such alleged harassment.  However, Defendant has not moved for a more definite statement pursuant to Fed.R.Civ.P. 12(e).

federal government involve a waiver of sovereign immunity, *Irwin v. Dep't of Veterans Affairs*, 498 U.S. 89, 94 (1990), strict compliance, *id.*, with both Title VII's "rigorous administrative exhaustion requirement and time limitations," *Brown v. General Services Administration*, 425 U.S. 820, 833 (1976), is prerequisite to a district court's subject matter jurisdiction. *Irwin*, 498 U.S. at 94 (failure to initiate action with 30 days of notice of adverse agency determination of plaintiff's discrimination claim required by 42 U.S.C. § 2000e-16(c) requires dismissal for lack of subject matter jurisdiction). Thus, prior to commencing a Title VII action against her employer, a federal employee must timely exhaust all applicable administrative remedies including the requirement to seek EEO counseling within 45 days of the discriminatory occurrence about which she is aggrieved under 29 C.F.R. § 1614.105(a)(1) ("§ 1614.105(a)(1)"). *See Powell v. Donahoe*, 519 Fed.Appx. 21, 22 (2d Cir. June 4, 2013) ("prior to bringing suit under the Rehabilitation Act, as with other federal statues prohibiting discrimination, a plaintiff must first timely exhaust the administrative remedies at his disposal," including as required by 29 C.F.R. § 1614.105(a)(1)); *Belgrave v. Pena*, 254 F.3d 384, 386 (2d Cir. 2001) (failure to file administrative complaint within 15 days after agency's EEO counsellor's notice pursuant to § 1614.105(a), required dismissal of plaintiff's Title VII and ADEA action) (citing *Downey v. Runyon*, 160 F.3d 139, 145 (2d Cir. 1998)); *Crane v. Shulkin*, 293 F.Supp.3d 352, 359 (W.D.N.Y. 2018) (failure to comply with 29 C.F.R. § 1614.105(a)(1) requiring aggrieved employee request assistance of agency EEO counselor within 45 days of occurrence of alleged discriminatory conduct, absent waiver, estoppel or equitable tolling, requires dismissal as time-barred) (quoting *Fitzgerald v. Henderson*, 251 F.3d 345, 359 (2d Cir. 2001) ("The 45-day period serves as a statute of limitation; thus, as a general rule, claims alleging conduct that occurred

more than 45 days prior to initiation of administrative review [by EEO counselor][6] are time-barred.")); *Warren v. Johnson*, 2015 WL 1243319, at *3 (W.D.N.Y. Mar. 2015) (failure, *inter alia,* to seek EEO review within 45 days of incident resulting in disciplinary action in accordance with § 1614.105(a)(1), absent a continuing violation exception, required dismissal of claim). Courts "cannot dispense freely with the 45-day time limit, which the Supreme Court has held must be strictly construed." *Pollock v. Chertoff*, 361 F.Supp.2d 126, 129-135 (W.D.N.Y. 2005) (citing *Baldwin County Welcome Center v. Brown*, 466 U.S. 147, 152 (1984)). The same administrative exhaustion requirements apply to federal employee claims of discrimination and retaliation brought under the Rehabilitation Act as well Title VII. *See* 29 C.F.R. § 1614.105(a)(1) (alleged discrimination based on "sex" or "disability" requires aggrieved employee "consult a[n EEO] Counselor prior to filing a complaint . . .."); *Gentile v. Potter*, 509 F.Supp.2d 221, 233 (E.D.N.Y. 2007) ("A plaintiff who alleges discrimination and retaliation under the Rehabilitation Act or Title VII must exhaust his administrative remedies within a specified time-frame [45 days] before he may file a complaint in federal court."). Compliance with the exhaustion requirements applicable to Title VII and Rehabilitation Act claims against the federal government enables the federal agency employer "'to investigate, mediate, and take remedial action to encourage the settlement of discrimination disputes through conciliation and voluntary compliance.'" *Hudson v. Potter*, 497 F.Supp.2d 491, 500 (W.D.N.Y. 2007) (quoting *Spurlock v. NYNEX*, 949 F.Supp. 1022, 1027 (W.D.N.Y. 1996)), *report and recommendation adopted,* 497 F.Supp.2d at 492-93. *See Pena v. Potter*, 326 Fed.Appx. 33, 34 (2d Cir. May 7, 2009)

---

[6] Unless otherwise indicated all bracketed material is added.

("Exhaustion [pursuant to § 1614.105(a)] before the EEOC is 'an essential element of Title VII's statutory scheme and is designed to give the administrative agency the opportunity to investigate, mediate, and take remedial action.'" (quoting *Shah v. N.Y. State Dep't of Civil Serv.*, 168 F.3d 610, 614 (2d Cir. 1996)). Plaintiff alleges her initial Agency EEO officer contact, as required by § 1614.105(a)(1), was on May 15, 2017 (Dkt. 1 ¶ 9);[7] accordingly, Defendant contends, Dkt. 6 at 7-8; Dkt. 11 at 2-6, all of Plaintiff's claims – disparate treatment/sexual harassment, hostile work environment, failure to accommodate Plaintiff's alleged P.T.S.D. disability, and retaliation – based on Defendant's alleged discriminatory actions and failures to accommodate Plaintiff's P.T.S.D. disability occurring prior to April 1, 2017, *i.e.*, 45 days prior to Plaintiff's request for EEO counseling on May 15, 2017 (*see* Dkt. 1 ¶¶ 17-23) are time-barred[8] and, therefore, must be dismissed. Thus, Plaintiff's claims to the extent based on occurrences after May 1, 2017, if not subject to dismissal on other grounds asserted by Defendant, as discussed, *see* Discussion, *infra*, at 34-53, would not be barred on this ground.

Strict compliance with procedural prerequisites including administrative requirements applicable to filing Title VII complaints of employment discrimination against the federal government is "a condition to the waiver of sovereign immunity," *Irwin*, 498 U.S. at 94, and, as such, is an essential element of Plaintiff's claims. *Id.* "Exhaustion of [EEOC administrative remedies] is ordinarily 'an essential element' of a Title VII claim.'" *Williams v. New York City Housing Auth.*, 458 F.3d 67, 70 (2d Cir. 2006)

---

[7] Plaintiff's Administrative Complaint indicates Plaintiff's Agency EEO Counselor contact was on May 14, 2017. *See* Dkt. 7 at 3.

[8] Defendant's motion, as noted, is brought pursuant to Fed.R.Civ.P. 12(b)(6), not, despite *Irwin's* holding that failure to exhaust administrative remedies involving a discrimination claim against a federal agency deprives the court of subject matter jurisdiction, *Irwin*, 498 U.S. at 94, pursuant to Fed.R.Civ.P. 12(b)(1).

(quoting *Legnani v. Alitalia Linee Aeree Italiane, S.P.A.,* 274 F.3d 683, 686 (2d Cir. 2001)). "'[T]he focus should be on the factual allegations made in the [EEOC] charge itself, describing the discriminatory conduct about which a plaintiff is grieving.'" *Williams*, 458 F.3d at 70 (internal quotation marks and citations omitted). "The central question is whether the complaint filed with the EEOC gave that agency 'adequate notice to investigate discrimination on both bases [of sex-based discriminatory employment practices and retaliation].'" [9] *Id.* (quoting *Deravin v. Kerik*, 335 F.3d 195, 201 (2d Cir. 2003)). The required degree of exhaustion must be affirmatively pleaded to demonstrate that plaintiff therefore has a plausible claim for relief. *Id.* (affirming dismissal of two of plaintiff's retaliation claims as filed more than 300 days after plaintiff's EEOC filing asserting the retaliation claims); *see also Fitzgerald*, 261 F.3d at 355 (affirming dismissal, on summary judgment, of plaintiff's sexual harassment claims as lacking in jurisdiction for failure to timely contact USPS EEO counselor within 45 days of supervisor's alleged sexual harassment of plaintiff occurring between August 1994 and April 1995).[10] Here, Plaintiff alleges several specific acts of Grube's improper conduct directed to Plaintiff because of her sex (and other Agency employees) that occurred more than 45 days prior to Plaintiff's initial EEO contact with the Agency's EEO counsellor on May 15, 2017, *viz.*, Grube's improper comments of a sexual nature to Plaintiff and other Agency employees commencing May 2016 that Plaintiff alleges continued throughout Grube's employment at the Agency, which terminated at the end

---

[9] Unless otherwise indicated all underlining added.

[10] *But see Boos v. Runyon*, 201 F.3d 178, 182 (2d Cir. 2000) (lack of timely request for EEO assistance by federal employee not jurisdictional); *contra Filer v. Donley*, 690 F.3d 643, 646 (5th Cir. 2012) (failure to exhaust EEO administrative remedies in Title VII suits against federal government jurisdictional) (citing *Pacheco v. Mineta*, 448 F.3d 783, 789 (5th Cir. 2006), and *Tolbert v. United* States, 916 F.2d 245, 249 (5th Cir. 1990)).

14

of May 2017, Dkt. 1 ¶ 17, concerning his inadequate "sex life" and that of Plaintiff's co-workers as well as his desire for a more responsive partner, frequent non-work related visits to Plaintiff's office, lingering unnecessarily in Plaintiff's office, repeated unwelcome lunch invitations to Plaintiff, Dkt. 1 ¶¶ 17, improper comments to Plaintiff regarding her attractive appearance, Dkt. 1 ¶ 19, "regularly . . . [making] unwelcomed calls to Plaintiff on Plaintiff's personal cell phone number" which Grube had obtained from the Agency's employment records, Dkt. 1 ¶ 20, "inappropriately [non-consensually] touch[ing] Plaintiff's shoulders" in October 2016, Dkt. 1 ¶ 22, and, beginning in December 20, 2016, texting Plaintiff on her personal cell phone.  Dkt. 1 ¶ 23.[11]

Defendant contends, Dkt. 6 at 8, that to the extent any of these incidents are alleged to have occurred prior to April 1, 2017, the Complaint fails to allege that with respect to Grube's conduct, Plaintiff, as an aggrieved federal employee, within 45 days of the "matter alleged to be discriminatory," contacted the Agency's EEO counselor, as required by § 1614.105(a)(1), thus requiring Plaintiff's Title VII and Rehabilitation Act claims be dismissed for failure to state a claim to the extent premised on any incidents, involving Grube which Plaintiff alleges constituted sexual harassment, alleged to have occurred prior to April 1, 2017.  *See Crane*, 293 F.Supp.3d  at 362-63 (granting summary judgment dismissing as not exhausted plaintiff's failure to promote claim with defendant's EEO counselor within 45 days).  To avoid dismissal of Plaintiff's claims for lack of exhaustion of administrative remedies, based on Grube's pre-April 1, 2017 alleged misconduct, Plaintiff relies upon the continuing violation theory so that Plaintiff's May 15, 2017 EEO request for counseling retrospectively covers all of Grube's alleged

---

[11]  Plaintiff alleges numerous other unwanted and improper actions by Grube, which continued in April 2017, including multiple calls to her on her personal phone on one day, repeated unnecessary visits to Plaintiff's office, and approaching, in an intimidating manner, Plaintiff in an Agency office hallway.

sexually motivated contacts directed to Plaintiff throughout the entire period prior to this date, *i.e.* beginning in May 2016 through May 2017, during which period Plaintiff was subjected to such contacts, thereby administratively exhausting all of these incidents as required. Dkt. 10-2 at 58.

Under the continuing violation theory, where a plaintiff has alleged a "'continuous practice and policy of discrimination . . . the commencement of the statute of limitations period may be delayed until the last discriminatory act in furtherance of it.'" *Fitzgerald*, 251 F.3d at 359 (quoting *Gomes v. Avco Corp.*, 964 F.2d 1330, 1333 (2d Cir. 1992) (further citation and internal quotation marks omitted)).  "[A] continuing violation may be found 'where specific and related instances of discrimination are permitted by the employer to continue unremedied for so long as to amount to a discriminatory policy or practice.'"  *Id.* (quoting *Cornwell v. Robinson*, 23 F.3d 694, 704 (2d Cir. 1994)). However, "discrete discriminatory acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges.  Each discrete discriminatory act starts a new clock for filing charges related to that act."  *National R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 113 (2002).  "'[M]ultiple incidents of discrimination, even similar ones, that are <u>not</u> <u>the</u> <u>result</u> of a discriminatory policy or mechanism do not amount to a continuing violation.'"  *Rowe v. N.Y.S. Dep't of Taxation & Fin.*, 2018 WL 3384429, at *4 (N.D.N.Y. July 10, 2018) (quoting *Cabrera v. New York City*, 436 F.Supp.2d 635, 642 (S.D.N.Y. 2006)).  "[A] plaintiff may not rely on a continuing violation theory of timeliness unless she has asserted that theory in the administrative proceedings."  *Id.* (citing *Miller v. Int'l Tele. & Telegraph Corp.*, 755 F.2d 20, 25 (2d Cir.), *cert. denied*, 474 U.S. 851 (1985)).  *See Fitzgerald,* 251 F.3d at 360 (holding plaintiff may not rely on a continuing violation theory she has not asserted in her administrative

16

proceedings).   Additionally, claims not pursued before a federal agency employer, as required by § 1614.105(a)(1), may nevertheless be alleged in a timely judicial action if the claim is "reasonably related" to those which were timely asserted.  *Id.* at 359 (citing caselaw).  A claim is "considered reasonably related if the conduct complained of would fall within the 'scope of the EEOC investigation which can reasonably be expected to grow out of the charge' that was made . . .."  *Fitzgerald,* 251 F.3d at 359-60 (quoting *Butts v. City of New York Dep't. of Housing Preservation & Development*, 990 F.2d 1397, 1402 (2d Cir. 1993)).  "Successive conduct that is part of a continuing wrong is by its very nature 'reasonably related' to the earlier conduct."  *Id.* (quoting *Cornwell v. Robinson*, 23 F.3d 694, 706 (2d Cir. 1994)).  Moreover, as the Second Circuit has stated,

> "even where there is no formal [discriminatory practice or] policy, the continuing violation theory may be used where there have been specific and related instances of discrimination, and the employer has permitted them to continue unremedied for so long that its inaction may reasonably be viewed as tantamount to a policy or practice of tolerating such discrimination."

*Fitzgerald*, 251 F.3d at 362.

Here, despite the absence of specific verbiage asserting Plaintiff's reliance upon the continuing violation theory to satisfy Plaintiff's exhaustion requirements for Grube's harassing behavior toward Plaintiff and Goehle's alleged failure to intervene prior to April 1, 2017, a careful examination demonstrates the Administrative Complaint provided the Agency and EEOC with sufficient notice and an opportunity to investigate and remediate all of Plaintiff's complaints including those, based on Grube's conduct, prior to April 1, 2017.  For example, the Complaint describes Grube's repetitive boorish behavior including unwanted sexually explicit statements directed to Plaintiff and other Agency employees regarding their respective sex lives commencing upon Grube's

starting employment at the Agency in May 2016, Defendant's Exh. A, Dkt. 7 ¶¶ 5-7,

Grube's unwanted touching of Plaintiff in September-October 2016, *id.* ¶ 8, Grube's

continued phone calls to Plaintiff "throughout [the period of] his employment" on both

Plaintiff's personal cell phone and office phone for non-work related conversations, *id.*

¶¶ 9-10, Grube's habit, *viz.*, "pattern of behavior," of loitering excessively in Plaintiff's

office to compliment Plaintiff on her physical appearance and propose a romantic

involvement with Plaintiff, suggesting his desire to "go on a trip like that," with Plaintiff,

*viz.,* to satisfy Grube's alleged sexual needs, *id.* ¶¶ 9-11, and Grube's commencing to

send text messages beginning in December 2016, *id.* ¶ 12, and later, in April 2017,

when Grube started to make numerous repetitive personal calls to Plaintiff on her cell

phone causing Plaintiff to become fearful.  *Id.* ¶ 14.  Plaintiff also alleged that based on

her information and belief, Goehle was aware of Plaintiff's complaints and those of other

Agency employees about Grube's behavior during the period prior to Plaintiff's

discussion with Goehle about her complaints against Grube on May 3, 2017 but failed to

take corrective action against Grube.  *Id.* ¶¶ 16-18.  Thereafter, Plaintiff described to

Goehle Grube's repetitive unnecessary visits to Plaintiff's office on May 9, 2017 which

Plaintiff tried to avoid by requesting personal leave, flex-time, or on-line work from home

that day which request Goehle refused.  *Id.* ¶¶ 25-28.  In sum, Plaintiff's recounting of

the events upon which her Administrative Complaint, was based charging the Agency

with a failure to act against Grube's continuing harassment of Plaintiff because he

perceived her as an attractive female who he repeatedly importuned with a sexual

purpose over the entire one-year period of his employment, fairly described a series of

inter-related conduct by Grube of which the Agency was made aware which, taken as a

whole, was sufficient to notify the Agency and Defendant's EEO office that both

Plaintiff's May 15, 2017 Request for Counseling, as well as the Administrative Complaint, intended to rely on the entirety of Grube's disturbing interactions with Plaintiff, including all of Grube's aberrant conduct directed to Plaintiff prior to April 2017, as reasonably related to Grube's post-April 2017 serial harassment toward Plaintiff, specifically, that all such conduct was "part of a continuing wrong." *Fitzgerald*, 251 F.3d at 359. The court therefore finds Plaintiff may rely upon the continuing violation theory to satisfy Plaintiff's exhaustion requirement for the pre-April 2017 conduct of Grube and the Agency's failure to respond to Plaintiff's complaints plausibly alleging that Grube's sexually oriented misconduct may be attributed to the Agency as representing an informal policy or practice. *See Fitzgerald*, 251 F.3d at 363 (finding plaintiff's alleged sexual harassment claim based on supervisor's conduct over a two- and one-half-year period prior to plaintiff's EEO complaints to be sufficiently exhausted under continuing violation theory where plaintiff's allegations in her administrative complaint provided the agency with sufficient notice of plaintiff's reliance on the continuing violation theory).

In opposition to Plaintiff's reliance on the continuing violation theory, Defendant asserts, Dkt. 11 at 4, that Plaintiff's allegations demonstrate a "gap" of several months, – *i.e.,* December 2016 when Plaintiff alleges Grube began to text Plaintiff on her cell phone, Dkt. 1 ¶ 23, through April 2017 – when Plaintiff alleges Grube called Plaintiff "several times in one day," Dkt. 1 ¶ 24, that precludes application of the continuing violation theory to avoid Plaintiff's failure to exhaust timely complaints about any of Grube's pre-April 2017 conduct. Dkt. 11 at 4 (citing *Fitzgerald*, 251 F.3d at 364-65 (continuous violation doctrine inapplicable to earlier "phase" of supervisor's alleged sexual harassment occurring over two years prior to timely exhausted "second phase" of such harassment); *McGullam v. Cedar Graphics, Inc.*, 609 F.3d 70, 78 (2d Cir. 2010)

(rejecting continuous violation doctrine with respect to two phases of sexual harassment separated by one-year); and *Bowen-Hooks v. City of New York*, 13 F.Supp.3d 179, 206 (E.D.N.Y. 2014) (no continuing violation doctrine with respect to three-year period between alleged phases of harassment)).  However, Defendant's contention is based on an overly restrictive reading of Plaintiff's allegations and, as such, fails.  Fairly read, the Complaint alleges, unambiguously, Grube's record of unwanted phone calls extended "throughout the course of his [Grube] employment" at the Agency, Dkt. 1 ¶ 20.  Plaintiff further alleges she brought this problem to the attention of Agency "supervisors" beginning in May 2016.[12]  Dkt. 1 ¶ 21.  Grube's explicit attempts to engage Plaintiff in sexually oriented conversations and a personal relationship of a sexual nature commenced almost immediately upon his arrival at the Agency in May 2016 and constituted "constant harassment" of Plaintiff which continued until his resignation at the end of the following May.  Dkt. 1 ¶ 17.  In December 2016, Plaintiff specifically also alleges Grube, "began to text Plaintiff on her personal cell phone," Dkt. 1 ¶ 23, and, later, in April 2017 Grube "called Plaintiff's personal phone number multiple times in one day" which harassment was again reported, without effect, to Goehle.  Dkt. 1 ¶ 24.  Thus, assuming the truth of Plaintiff's allegations as required, *Twombly*, 550 U.S. at 570; *Harris*, 572 F.3d at 71, and giving the Plaintiff's allegations a liberal construction as also required on a Rule 12(b)(6) motion to dismiss, *Chen v. Major League Baseball Properties, Inc.*, 798 F.3d 72, 76 (2d Cir. 2015) (when considering Rule 12(b)(6) motion to dismiss, allegations of complaint must be liberally construed with all reasonable

---

[12]  Title VII liability for a co-worker's sexual harassment may be imputed to the employer where the employer was "negligent in controlling working conditions."  *Lekettey v. City of New York*, 637 Fed.Appx. 659, 662 (citing *Vance v. Ball State Univ.*, 570 U.S. 421, 423 (2013)).  However, as Defendant does not challenge the Complaint on this basis the court need not address it.

inferences drawn in plaintiff's favor), Plaintiff's allegations do not create a "clear gap;" as

Defendant asserts, Dkt. 1 1 at 4, that defeats the application of the continuing violations

theory.  In particular, what Plaintiff has alleged is that Grube had, upon encountering

Plaintiff in May 2016, started to <u>call</u> Plaintiff on her <u>telephone</u> which unwanted calls

continued throughout Grube's employment, Dkt. 1 ¶ 20, along with Grube's continuous

unnecessary visitations to Plaintiff's office to engage in sexually oriented discussions

which were reported to Plaintiff's "supervisors," Dkt. 1 ¶¶ 17-18, and that, starting in

December 2016, Grube also began contacting Plaintiff by sending <u>text</u> <u>messages</u> to

Plaintiff's cell phone.  Dkt. 1 ¶ 23.  Thus, rather than creating, as Defendant posits, Dkt.

11 at 4, a temporal 'break' in Grube's continuous campaign of harassment directed to

Plaintiff using the telephone for apparently sexually oriented reasons, Plaintiff's

allegations (Dkt. 1 ¶ 24) that Grube called Plaintiff repeatedly in "one day" in April 2017

does not indicate Grube had, during the period December 2016 to April 2017, ceased

contacting Plaintiff by phone and the sending of text messages.  Rather, such

allegations taken as whole assert that Grube's April 2017 phone calls, in addition to his

continuing efforts to text Plaintiff, commencing in December 2016, as well as Grube's

repeated efforts to contact Plaintiff by telephone commencing in May 2016, represent an

intensified effort to carry out his lecherous conduct directed to Plaintiff because of her

sex.  Far from breaking any "continuum of discrimination," *Fitzgerald*, 251 F.3d at 359

(quoting *Quinn v. Green Tree Credit Corp.*, 159 F.3d 759, 766 (2d Cir. 1998)), as

Defendant asserts, Plaintiff's allegations, properly and fairly construed, reinforce

application of the continuing violation theory to Plaintiff's First Cause of Action based on

disparate treatment by Grube and his sexual harassment of Plaintiff as such allegations,

correctly understood, unambiguously allege facts forming part of the "continuum" of

Grube's discriminatory sex-based harassment of Plaintiff throughout the period of
Grube's employment in which the Agency, as a result of Goehle's indifference to
Plaintiff's repetitive complaints, acquiesced.  Accordingly, Defendant's motion, limited to
dismissal of Plaintiff's disparate treatment claim under the First Cause of Action to the
extent based on incidents involving Grube alleged prior to April 1, 2017, as Defendant
requests, should be DENIED.

2.    Second Cause of Action (Hostile Work Environment).

Plaintiff's Second Cause of Action asserting Plaintiff's employment in a hostile
work environment on account of her sex, *see Gregory v. Daly,* 243 F.3d 687, 695 (2d
Cir. 2001) ("'any unequal treatment of an employee *that would not occur but for the
employee's gender* may, if sufficiently severe of pervasive . . ., constitute a hostile
environment in violation of Title VII") (quoting *Williams v. General Motors Corp.*, 187
F.3d 553, 565 (6th Cir. 1999)) (italics in original), is based on Plaintiff's allegations of
"sexually offensive acts," Dkt. 1 ¶ 61, as more fully described in Complaint paragraphs
17- 48, regarding Grube's behavior throughout the period of Grube's employment at the
Agency directed to Plaintiff, and Defendant's failure to remedy such conduct despite
being made aware of Grube's conduct, or that Defendant through "reasonable diligence
should have known" of such misconduct and acted to stop it.  Dkt. 1 ¶ 53.  Specifically,
to establish a Title VII claim based on a hostile work environment plaintiff "must show
that the 'workplace is permeated with discriminatory intimidation, ridicule, and insult that
is sufficiently severe or pervasive to alter the conditions of the victim's employment and
create an abusive working environment.'"  *Raspardo v. Carlone*, 770 F.3d 97, 114 (2d

Cir. 2014) (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993)).[13]  Although a claim alleging a plaintiff was subjected to a hostile work environment is recognized as arising under Title VII and as such may be asserted by federal employees against a federal agency employer, such a claim is nevertheless subject to the same administrative exhaustion requirements applicable to other Title VII claims.  *See Hudson*, 497 F.Supp.2d at 501 (citing *Nat'l Railroad Passenger Corp. v. Morgan*, 536 U.S. 101, 113 (2002)).  Because a claim based on an alleged hostile work environment, as an unlawful employment practice in violation of Title VII, is not based on a single discrete act of discrimination, *Morgan*, 536 U.S. at 115, but may accrue over an extended time period involving repeated similar prohibited conduct in employment, *id.* (citing *Morgan*, 536 U.S. at 114), provided "at least one incident alleged in support of a hostile work environment [claim] is included and exhausted in a timely administrative complaint, the [entire] hostile work environment claim will be considered timely exhausted."  *Id.* (citing *Morgan*, 536 U.S. at 117).

Here, Plaintiff has alleged exhaustion of all the incidents preceding Plaintiff's filing of her § 1614.105(a)(1) Request for Counseling on May 15, 2017, *see* Dkt. 1 ¶ 13, including Grube's repeated unwanted phone calls in April 2017 (Dkt. 1 ¶ 24), and Grube's unnecessary numerous visits to her office on May 9, 2017 Dkt. 1 ¶¶ 28, 31, as well as Goehle's refusal of Plaintiff's requests permitting Plaintiff to take personal leave or work on-line from home that day to avoid Grube while alone in her office.  *Id.*  Thus, unless some of the incidents alleged to involve Grube occurring prior to April 1, 2017

---

[13]  Employers may be vicariously liable under Title VII based on a claim that a co-worker created a hostile work environment where "the employer, upon becoming aware of the misconduct, fails to remedy it." *Bentley v. AutoZoners, LLC,* 935 F.3d 76, 91 (2d Cir. 2019) (citing *Summa v. Hofstra Univ.*, 708 F.3d 115, 124 (2d Cir. 2013)).  However, as with the First Cause of Action, Defendant does not challenge the Complaint on this issue in Defendant's motion.

are discrete, *i.e.,* unrelated to one another, *Morgan*, 536 U.S. at 115 (separate

nonactionable "discrete" acts may support hostile work environment claim), and

unconnected with the later, post-April 2017, events which Plaintiff timely exhausted, *see*

*Morgan*, 536 U.S. at 115, under the more flexible exhaustion requirement for a Title VII

hostile work environment claim as established in *Morgan*, all of Plaintiff's allegations,

including Plaintiff's encounters with Grube alleged to have occurred prior to April 2017,

are properly deemed exhausted and may be asserted as supportive of Defendant's

liability under the Second Cause of Action.  As discussed, Discussion, *supra*, at 19-22,

there is no merit to Defendant's contention that Plaintiff's pre-April 2017 allegations

represent a 'gap' in the alleged scenario based on Grube's continued aberrant behavior

such that these incidents should be considered discrete and unconnected from the post-

April 2017 events which were timely exhausted.  In this case, the common thread in

Plaintiff's myriad allegations, based on Grube's sex-motivated conduct directed to her

as a female, and Goehle's repeated failures to take corrective actions, readily satisfies

this prerequisite:  (i) Grube was the sole perpetrator of numerous and repetitive

interactions with Plaintiff, which included comments of a sexual nature, throughout the

asserted unexhausted and exhausted periods, (ii) these interactions involved the same

type of repeated conduct, including unwanted personal conversations involving personal

sexual content, while loitering at Plaintiff's work station and by communications to

Plaintiff on Plaintiff's personal and work telephones regarding Grube's sexual desires,[14]

---

[14] That Plaintiff's allegations describing Grube's numerous contacts both in-person and by phone do not also allege the sexual nature of each contact is irrelevant.  *See Gregory*, 243 F.3d at 695 ("[T]his court has found workplace situations discriminatory under a hostile work environment theory where the conduct at issue, though lacking any sexual component or reference to the victim's sex, could, in context, reasonably be interpreted as having been taken on the basis of plaintiff's sex.") (citing *Howley v. Town of Stratford*, 217 F.3d 141, 145, 148, 154-55).

(iii) unsolicited complimentary comments about Plaintiff's physical appearance, and (iv) Grube's persistent invitations to Plaintiff to advance his lascivious interest in Plaintiff. *See Morgan*, 536 U.S. at 120-21 (finding that repeated racial epithets by same managers and derogatory remarks of a racial nature which occurred with relative frequency supported plaintiff's hostile work environment claim as administratively exhausted).  Defendant's view of Plaintiff's allegations, as describing two discrete, unrelated "phases" of Grube's behavior, therefore represents a cramped and incorrect reading, and, as such, cannot support that Plaintiff's pre-April 2017 allegations of Grube's misconduct to support Plaintiff's Second Cause of Action are unexhausted and thus subject to dismissal.  Accordingly, Defendant's motion directed to the Second Cause of Action seeking to limit the scope of Defendant's liability on Plaintiff's hostile work environment claim to Grube's post-April 1, 2017 conduct should be DENIED.

3.    <u>Plaintiff's Third and Fifth Causes of Action (Retaliation)</u>.

Plaintiff's retaliation claim in the Third Cause of Action is based on Plaintiff's allegation that Defendant discriminated against Plaintiff with respect to Plaintiff's employment compensation, terms, conditions, and privileges, because Plaintiff complained about Defendant's violations of Title VII, Dkt. 1 ¶¶ 71-72; Plaintiff's Fifth Cause of Action alleges retaliation based on Plaintiff's alleged complaints that Defendant had violated Plaintiff's rights under the Rehabilitation Act on account of the aggravation of Plaintiff's alleged P.T.S.D. disability resulting from Grube's sexually-oriented harassment of Plaintiff combined with Goehle's alleged failure to take remedial action in the form of a reasonable accommodation responsive to Plaintiff's requests for a change in Plaintiff's work schedule or relocation of Grube's work station away from that of Plaintiff's.  Retaliation claims arise under 42 U.S.C. § 2000e-3(a) and are

available against federal agency employers, *see Rochon v. Gonzales*, 438 F.3d 1211, 1216 (D.C.Cir. 2006), as an "unlawful employment practice" applicable to federal agencies through 42 U.S.C. §§ 2000e-16(a) (federal employment to be "free from any discrimination based on race, color, religion, sex or national origin") and 2000e-16(d) (permitting actions by federal employees in district court for Title VII violations). Defendant contends that like Plaintiff's disparate treatment, sexual harassment, and hostile work environment claims based on Grube's alleged conduct prior to April 1, 2017, both of Plaintiff's retaliation claims in these causes of action must be dismissed because Plaintiff failed to administratively exhaust such claims arising from Grube's pre-April 2017 conduct in the course of processing her administrative complaint pursuant to 29 C.F.R. § 1614.106(b) ("§ 1614.106(b)") which requires, as a precondition to an action in district court that the aggrieved employee file a formal administrative complaint with the agency within 15 days after the employee's final interview with the EEO counsellor charging the violation of Title VII, in this instance, retaliation.  Dkt. 6 at 10; Dkt. 11 at 5-6.

Compliance with § 1614.106(b) is, as with § 1614.105(a)(1), a prerequisite to filing an action under Title VII and the Rehabilitation Act by a federal employee.  *See Stella v. Potter*, 297 Fed.Appx. 43, 45 (2d Cir. Oct. 24, 2008) (considering compliance with 29 C.F.R. § 1614.106 required before commencing suit under Title VII and the Rehabilitation Act).  A claim for retaliation requires a showing that the plaintiff participated in protected activity, such as filing an EEO complaint, asserting plaintiff suffered from work-place discrimination, such as an agency's tolerance of a co-worker's sex-based harassment, prohibited by Title VII, or the Rehabilitation Act on account of a defendant-employer's refusal to accommodate a *bona fide* disability, that defendant was aware of the plaintiff's protected activity, that plaintiff experienced an adverse

employment action by defendant, and the existence of a causal connection between the protected activity and the adverse employment action. *Blanc v. Sagem Morpo, Inc.*, 394 Fed.Appx. 808, 809 (2d Cir. Oct. 1, 2010) (citing *Terry*, 336 F.3d at 149-51)); *see also Hicks v. Bain*, 593 F.3d 159, 164 (2d Cir. 2010). The same pre-suit requirement of exhaustion of administrative remedies applicable to Plaintiff's Title VII claim based on disparate treatment and a sex-based employment discrimination, here, Grube's alleged sexual harassment of Plaintiff and Goehle's more favorable response to Plaintiff's male co-worker's complaints concerning Grube's sexual oriented conduct toward that employee, as alleged in Plaintiff's First Cause of Action, and Plaintiff's Rehabilitation Act claim alleging the Agency's failure to accommodate Plaintiff's P.T.S.D. in response to Grube's harassment, Plaintiff's Fourth Cause of Action, is required for a Title VII and Rehabilitation Act claim based on retaliation as asserted by Plaintiff in the Third and Fifth Causes of Action. *See Gentile,* 509 F.Supp.2d at 233 ("A plaintiff who alleges discrimination and retaliation under the Rehabilitation Act or Title VII must exhaust his administrative remedies within a specified time frame before he may file a complaint in federal court.") (citing *Briones v. Runyon*, 101 F.3d 287, 289-90 (2d Cir. 1996), and caselaw).[15] The Agency's form EEO Administrative Complaint includes several boxes which the aggrieved employee is requested to check as a ground(s) for the complaint such as race, age, etc., as well as "Reprisal," or retaliation. *See* Defendant's Exh. A at 3. Specifically, Defendant contends Plaintiff's failure to designate in the Administrative

---

[15]  Other than Plaintiff's failures to exhaust administrative remedies with respect to her allegations of Grube's misconduct and Goehle's alleged failure to accommodate Plaintiff's disability prior to April 1, 2017, Defendant's motion does not seek outright dismissal of Plaintiff's Fourth Cause of Action alleging violation of Section 501 of the Rehabilitation Act against Defendant based on the Agency's denial of a reasonable accommodation of Plaintiff's P.T.S.D. responsive to Grube's continuous harassment of Plaintiff.

Complaint "Reprisal," *i.e.*, retaliation, as one of the grounds for Plaintiff's Administrative

Complaint, thereby failed to provide the Agency with the required notice that Plaintiff

intended to pursue such a theory of discriminatory treatment and, thus, Plaintiff's Third

and Fifth Causes of Action were not administratively exhausted.  Dkt. 6 at 10

(referencing Dkt. 7 at 3); Dkt. 11 at 5-6 (same).  However, where a federal employee

fails to timely comply with the applicable filing requirement and thus fails to exhaust

available administrative remedies, a claim for "retaliation by an employer against an

employee for filing an EEO charge" or other protected activity, such as Plaintiff's

repeated e-mail complaints to Goehle, Dkt. 1 ¶¶ 35, 37, 41, may nevertheless proceed

irrespective of the plaintiff's failure to exhaust because courts hold that such employer

retaliation is reasonably related to a plaintiff's other exhausted discrimination claims.

*See Terry*, 336 F.3d at 151; *Hudson*, 497 F.Supp.2d at 503; *see also Williams*, 458 F.3d

at 70-71 (whether subsequent claims of discrimination are reasonably related to

retaliation administrative charge to avoid exhaustion requirement as to belated

retaliation claim requires close examination of underlying EEO charge in comparison to

judicial complaint); *cf. Ribis v. Mike Barnard Chevrolet-Cadillac, Inc.*, 468 F.Supp.2d

489, 497-98 (W.D.N.Y. 2007) ("*Ribis*") (newly asserted retaliation claims not reasonably

related to other claims of hostile work environment stated in EEO administrative

complaint).  A close examination of the allegations in Plaintiff's Administrative Complaint

in comparison to those in the judicial complaint in this action is therefore required.

*Williams,* 458 F.3d at 70-71.  Plaintiff does not dispute Plaintiff failed to designate

"Reprisal," *i.e.,* retaliation, nor that Plaintiff understood "Reprisal" to include a prohibited

retaliation by the Agency as a basis for Plaintiff's Administrative Complaint.  *See* Dkt.

20-2 (*passim*).  In opposition to Defendant's motion on this issue, Plaintiff contends that

Defendant's retaliation for "her filing her EEO complaint," need not be exhausted as this claim is reasonably related to the allegations in the EEO complaint.  Dkt. 10-2 at 13 (citing *Terry*, 336 F.3d at 151).

Moreover, on a motion to dismiss for lack of exhaustion of EEO administrative remedies, prerequisite for a judicial action by a federal employee, the court will examine the underlying administrative complaint used by a plaintiff to compare its statement of the alleged grounds for the complaint with plaintiff's allegations in the later federal judicial complaint.  *See Williams*, 458 F.3d at 70-71.[16]  Courts also hold that the reasonably-related exception to the exhaustion requirement for Title VII claims does not apply where the alleged retaliation occurred <u>before</u> the filing of the EEO charge or a plaintiff's engagement in other forms of protected activity.  *See Mathirampuzha v. Potter*, 548 F.3d 70, 78 n. 7 (2d Cir. 2008) (because plaintiff did not file an EEO complaint until <u>after</u> the date when the plaintiff suffered the alleged retaliatory act at the hands of his supervisor, plaintiff's alleged retaliation claim is insufficient); *see also Gregory* 243 F.3d at 701 (sufficiency of retaliation claims excludes "episodes of harassment that <u>preceded</u> [plaintiff's] protected activity[,] including workplace complaints").  Here, Plaintiff's retaliation claims as asserted in the Third Cause of Action alleging Defendant retaliated against Plaintiff for complaining of and opposing Defendant's discriminatory practices in violation of Title VII based on Plaintiff's sex and Plaintiff's retaliation claim asserted in the Fifth Cause of Action based on Defendant's refusal to accommodate Plaintiff's complaints of and opposition to  Defendant's discriminatory practices relating to, *i.e.*, the Agency's failure to accommodate based on Plaintiff's P.T.S.D. disability, should be

---

[16] Plaintiff does not oppose Defendant's request that the court examine Plaintiff's Administrative Complaint, Defendant's Exh. A, Dkt. 7, to aid in resolving this issue.

dismissed for several reasons.[17]  First, a retaliation claim in a Title VII action or one

based on the Rehabilitation Act may, as Plaintiff contends, Dkt. 10-2 at 5-7, avoid the

exhaustion of administrative remedies requirements, in this case compliance with §

1614.105(a)(1) or § 1614.106(b), as an exception to the exhaustion requirement, where

the asserted retaliation is reasonably related to the Plaintiff's underlying and properly

exhausted discrimination claims.  *See Terry*, 336 F.3d at 151 ("we have recognized

three situations in which claims not raised in an EEO charge are 'sufficiently related to

the allegations in the charge that it would be unfair to civil rights plaintiffs to bar such

claims in a civil action' . . . [including] (2) where the complaint is 'one alleging retaliation

by an employer against an employee for filing an EEOC charge'") (quoting *Butts v. City

of New York Dep't of Hous. Press & Dev.*, 990 F.2d 1397, 1402-03 (2d Cir. 1993)

(*superseded on other grd.*)).  However, where a plaintiff's allegations in the later judicial

action, such as the Complaint in this case, do not plausibly allege that the newly

asserted retaliation is reasonably related to the underlying discriminatory acts as

described in the administrative charge, the exception is unavailable.  *See Shepard v.

BCBG Max Azria Grp., Inc.*, 2012 WL 4832883, *24-26 (S.D.N.Y. Oct. 11, 2012)

(plaintiff's failure to check box on EEO administrative complaint form claiming retaliation

by the employer and to allege in such complaint defendant retaliated against her

---

[17]  P.T.S.D. is recognized as a *bona fide* impairment for purposes of a claim under § 504 of the
Rehabilitation Act, *see Felix v. New York City Transit Auth.*, 154 F.Supp.2d 640, 653-54 (S.D.N.Y. 2001)
(recognizing P.T.S.D. to be an impairment under ADA where plaintiff alleged chronic inability to sleep was
a substantial limitation on a major life activity), *aff'd*, 324 F.3d 102 (2d Cir. 2003).  To state an ADA or
Rehabilitation Act claim plaintiff must also allege in non-conclusory terms how the P.T.S.D. actually affects
a major life activity.  *See Cain v. Mandl College of Allied Health,* 2017 WL 2709743, at *4 (S.D.N.Y. June
22, 2017), *appeal dismissed*, 2017 WL 6880083 (2d Cir. Nov. 18, 2017) (table).  No such allegations
appear in either the Fourth or Fifth Causes of Action.  Instead, Plaintiff alleges only that "Plaintiff has a
record of an impairment that substantially limits one or more of her major life activities."  Dkt. 1 ¶ 78.
However, as Defendant does not challenge the Complaint on this ground, *i.e.*, for failure to state a claim,
the court does not further address the issue.

because plaintiff filed EEOC charge required dismissal of retaliation claims for failure to exhaust), *report and recommendation adopted,* 2012 WL 6150854 *2 (S.D.N.Y. Dec. 10, 2012).  "A retaliation claim raised for the first time in federal court based on conduct that occurred <u>before</u> the EEOC Charge was completed [by the plaintiff] is only 'reasonably related' to the EEOC discrimination complaint if the Charge contained factual allegations that would <u>put</u> <u>the</u> <u>EEOC</u> <u>on</u> <u>notice</u> of the underlying protected activity or suspected retaliatory animus."  *Id.* at *25 (citing cases).  Here, according to Plaintiff, Plaintiff's initial EEO counselling request pursuant to § 1614.105(a)(1) was filed May 15, 2017. Dkt. 1 ¶ 9.  A copy of Plaintiff's Request for EEO Counseling pursuant to § 1614.105(a)(1) is not included with the Complaint nor attached to Plaintiff's opposition memorandum; however, Plaintiff does not contend Plaintiff included in her Request for Counseling any claim Defendant had retaliated against her in such request.  Although the Complaint alleges several instances when Plaintiff complained to Goehle regarding Grube's improper contact prior to May 15, 2017, beginning May 3, 2017, *see* Dkt. 1 ¶ 25 ("On May 3, 2017, Plaintiff informed her supervisor Michael Goehle, that Mr. Grube's confirmed sexual harassment was exacerbating her P.T.S.D."); *see* Dkt. 1 ¶¶ 32 (Plaintiff informed Goehle of Grube's "continued harassment" on May 9, 2017), 35 (Plaintiff informed Goehle on May 12, 2017 of Grube's unnecessary office visits to Plaintiff), and 37 (Plaintiff's May 12, 2017 text message to Goehle that Grube's harassment was aggravating Plaintiff's P.T.S.D. causing Plaintiff "extreme stress and anxiety"), significantly, Plaintiff does not allege that in the EEO Request for Counseling filed May 15, 2017 with the Agency she asserted Goehle's repeated failures to respond to Plaintiff's complaints or requests for accommodation prior to that date as being retaliatory in nature.  Moreover, a fair review of Plaintiff's later, August 15, 2017, formal

Administrative Complaint filed as required by § 1614.106(b), Defendant's Exh. A (Dkt. 7) (*passim*), also fails to indicate Plaintiff intended to assert any retaliation by the Agency on account of her prior verbal or e-mail complaints to Goehle, or any other Agency official, about Grube, as alleged in the Complaint as she also did not check the EEO complaint form "Reprisal" box, Defendant's Exh. A (Dkt. 7 at 3), as one of the grounds for her Administrative Complaint or otherwise indicate that Goehle's failures to take corrective responsive action against Grube or provide reasonable accommodations for her P.T.S.D. to Plaintiff, after May 15, 2017, specifically because of Plaintiff's May 17, 2017 hallway encounter with Grube, were retaliatory in nature or in motivation. For example, in her concluding paragraph in the Administrative Complaint, Plaintiff asserts she has been subject to "sexual harassment in the workplace," a "hostile work environment based on sex," and a "failure to remedy and accommodate" Plaintiff. Dkt. 7 ¶ 44. Significantly, however, as this recitation indicates, there is no mention that Plaintiff was also asserting that by such nonfeasance Goehle had also retaliated against her by failing to act in response to Plaintiff's repeated complaints of Grube's prior unabated sexual harassment of Plaintiff or Goehle's failure to accommodate Plaintiff's P.T.S.D. over the prior 12 months. Moreover, as Goehle's alleged repeated failures to respond to Plaintiff's complaints largely preceded both Plaintiff's May 15, 2017 counseling request and entirely preceded the August 15, 2017 Administrative Complaint, such failures cannot plausibly be understood to allege Goehle thereby retaliated (even assuming they constitute retaliation) against Plaintiff for initiating such EEO filings or because of Plaintiff's several complaints to Goehle regarding Grube's harassment communicated prior to May 15, 2017. *See Gregory*, 243 F.3d at 701 (in evaluating alleged retaliation claim "we must omit from consideration those episodes of

harassment that <u>preceded</u> [plaintiff's] protected activity"); *Mathirampuzha*, 548 F.2d at

78 n. 7 (alleged retaliatory acts preceding protected activity such as required EEO

filings cannot support subsequent retaliation claim in Title VII actions). Moreover,

Plaintiff does not allege any retaliation by the Agency in response to Plaintiff's filing of

the August 15, 2017 Administrative Complaint.

Further, a careful reading of the Complaint, reveals Plaintiff does not allege her

EEO counseling request, filed May 15, 2017, pursuant to § 1614.105(a)(1) included any

suggestion that Goehle's failures during the preceding 12-months to respond to Plaintiff

constituted retaliation for any of Plaintiff's alleged prior complaints and accommodation

requests to Goehle prior to April 2017. In fact, the only event alleged in the Complaint

by Plaintiff as occurring after May 15, 2017, is the brief encounter with Grube in the

Agency's hallway, Dkt. 1 ¶ 39 ("Grube . . . yelled [at Plaintiff] in a taunting manner"), and

Goehle's failure to take action against Grube following Plaintiff's complaint to Goehle

describing the incident. Nowhere in Plaintiff's account of Plaintiff's complaint to Goehle

as to this encounter and Goehle's odd response, reminding Plaintiff not to invite

conversation with Grube, Dkt. ¶¶ 39, 40, is there anything to reasonably suggest

Plaintiff considered, and thus provided even a modicum of notice to the Agency or the

EEOC, Goehle's failure to properly respond on this occasion to constitute retaliation for

Plaintiff's filing of the May 15, 2017 EEO request. Plaintiff does not describe the content

of her May 15, 2017 EEO filing to demonstrate the Agency and EEOC had notice that

Plaintiff was even belatedly asserting a retaliation claim based on Goehle's refusal to

respond to and avoidance of Plaintiff following the May 17, 2017 hallway incident with

Grube, *see* Dkt. 1 ¶ 9, nor does Plaintiff allege her Administrative Complaint (Dkt. 7)

(*passim*) expressed any indication Plaintiff was asserting the Agency had engaged in

some form of retaliation against her.  In fact, the allegations in the Administrative

Complaint are barren of any indication Goehle's repeated failures to act against Grube

based on Plaintiff's formal complaints were considered by Plaintiff as retaliatory.  Thus,

nothing in either of Plaintiff's EEO charges, either the May 15, 2017 Request for

Counselling or the August 15, 2017 Administrative Complaint, would have reasonably

provided Agency EEO officials with even the barest notice of the existence of Plaintiff's

"protected activity or [Defendant's] suspected retaliatory animus," *Shepard,* 2012 WL

482883, at *25, against Plaintiff whether based on Defendant's failure to act in response

to Plaintiff's repetitive complaints about Grube or any other alleged form of adverse

employment action before or after April 1, 2019.  *Shepard*, 2012 WL 4832883, at *25;

*see also Fitzgerald*, 251 F.3d at 366 (affirming dismissal of plaintiff's retaliation claim for

lack of exhaustion where "[t]here was no semblance of that claim in . . . [plaintiff's] EEO

complaint").  Plaintiff's contention that Goehle's refusal to respond to Plaintiff's

complaints about Grube and even ignoring her during the work day, Dkt. 10-2 at 14,

sufficiently alleged a form of adverse employment action of a retaliatory nature,

therefore falls short as the question for exhaustion purposes is whether Plaintiff's

administrative allegations gave the Agency, or EEOC, sufficient notice to render them

reasonably related to the exhausted complaints.

Nor can such failures be excused on the ground that Plaintiff, in preparing her

administrative charges, was *pro se*, *see Ribis*, 468 F.Supp.2d at 498 (a *pro se* plaintiff

may be entitled to some leeway for failure to allege all relevant facts in EEOC

administrative complaint).  Here, as in *Ribis*, Plaintiff was represented by counsel during

this phase of the administrative process, *see* Dkt. 6 at 10 (citing Dkt. 7 at Bates No.

0000007) (referencing the Tarantino Law Firm as Plaintiff's Representative), a fact not

disputed by Plaintiff.  Accordingly, Plaintiff's retaliation claims as asserted in the Third

and Fifth Causes of Action based on Plaintiff's sex and disability, regardless of whether

predicated on Goehle's inactions in response to Plaintiff's complaint (or any other form

of adverse employment action) before or after April 1, 2017 do not qualify as an

exception to the applicable administrative exhaustion requirements as a condition to suit

in this court, as reasonably related to Plaintiff's two post-April 1, 2017 EEO filings, and,

as such, the Third and Fifth Causes of Action, should be DISMISSED on this ground.

      C.    <u>Defendant's Asserted Substantive Defects in Plaintiff's Claims</u>.

          1.    <u>First Cause of Action (Disparate Treatment/Sexual Harassment)</u>.

Defendant seeks dismissal of the First Cause of Action asserting Plaintiff's

disparate treatment claim arising from Grube's sexual harassment of Plaintiff and

Defendant's failure to take corrective action, Dkt. 6 at 11-14; Dkt. 11 at 6-7, on the

ground that Plaintiff has failed to plausibly allege Plaintiff suffered an adverse

employment action by Defendant on account of Plaintiff's sex.  Dkt. 6 at 12-13.

Specifically, Defendant contends Plaintiff's allegations do not plausibly allege Plaintiff

suffered any material adverse change in Plaintiff's terms and conditions of her

employment resulting from Defendant's failure to take action against Grube based on

Plaintiff's complaints including the commonly recognized forms of adverse employment

actions in Title VII cases such as demotion, reassignment, or termination.  Dkt. 6 at 13

(citing *Pimental v. City of New York*, 2002 WL 977535, at *3 (S.D.N.Y. May 14, 2002),

*aff'd*, 74 Fed.Appx. 146 (2d Cir. Sept. 30, 2003)).  Defendant further contends Plaintiff's

allegations to support Plaintiff suffered an adverse employment action based on Grube's

harassment of Plaintiff, motivated by Grube's apparent continual and undiminished

sexual interest in Plaintiff, as permitted by Goehle despite Plaintiff's repeated complaints

and requests for intervention, throughout the one-year period of Grube's employment at the Agency, are improperly "duplicative of her hostile work environment claim."  Dkt. 6 at 13 (citing cases).[18]  In opposition, Plaintiff contends that whether an employer's conduct qualifies as an adverse employee action, a required element for a Title VII employment discrimination claim is a "fact-specific inquiry," Dkt. 10-2 at 10, that "'depends on the circumstances of the particular case.'" (quoting *Burlington Northern Santa Fe Ry v. White*, 548 U.S. 53, 63 (2006)) ("*Burlington Northern*").  Plaintiff specifically asserts Goehle allowed a male co-worker who, like Plaintiff, also complained to Goehle concerning Grube's discussions of Grube's unsatisfactory sex life and unwanted physical contact (touching the employee's back and shoulders), Dkt. 10 at 18 (referencing Plaintiff's Exh. A at 00212), to use flex-time to avoid encounters at the Agency during his working hours with Grube while denying Plaintiff's similar request, *id.*, on May 9, 2017 (*see* Dkt. 1 at ¶¶ 28, 29).  Instead, Plaintiff alleges, Goehle required Plaintiff to continue to report for work and provide administrative assistance to Grube on that occasion and also refused Plaintiff's request that he order Grube to stay away from Plaintiff's office.  Dkt. 10-2 at 11 (referencing Dkt. 1 ¶ 36).

As relevant to this case, Title VII prohibits an employer, from "discriminat[ing] against . . . [an employee] with respect to . . . [her] sex."  42 U.S.C. § 2000e-2(a)(1).  To establish the employer engaged in a form of employment discrimination against an employee in violation of Title VII, a plaintiff must plausibly allege the employer took an "adverse employment action against . . . [her]."  *Vega v. Hempstead Union Free School Dist.*, 801 F.3d 72, 85 (2d Cir. 2015).  According to the Second Circuit, "'[a] plaintiff

---

[18]  Defendant does not assert Plaintiff has failed to adequately plead such harassment resulted from Defendant's policy or practice, either formal or informal, of fostering or condoning sexual harassment by co-workers as a sufficient predicate to impute the alleged co-worker harassment to Defendant.

sustains an adverse employment if he or she endures a <u>materially</u> <u>adverse</u> <u>change</u> in the <u>terms</u> and <u>conditions</u> of employment.'"  *Id.* (quoting *Galabya v. N.Y.C. Bd. of Educ.*, 202 F.3d 636, 640 (2d Cir. 2000) (internal quotation marks omitted)).  An adverse employment action is "'one which is more disruptive than a mere inconvenience or an alteration of job responsibilities.'"  *Vega*, 801 F.3d at 85 (quoting *Terry v. Ashcroft*, 336, F.3d 128, 138 (2d Cir. 2003) (internal quotation marks omitted)).  "'[M]aterial adverse changes' constituting an adverse employment action include termination, demotion, diminution of job title, 'significantly diminished material responsibilities, <u>or</u> <u>other</u> <u>indices</u> <u>unique</u> <u>to</u> <u>a</u> <u>particular</u> <u>situation.</u>'"  *Id.* (quoting *Terry*, 336 F.3d at 138).  Such adverse employment actions include actions as well as omissions such as a failure to hire or promote.  *See Wrobel v. County of Erie*, 692 F.3d 22, 31 (2d Cir. 2012) (listing adverse employment actions under Title VII including, *inter alia*, failure to hire and failure to promote).

At the "'pleadings stage of an employment discrimination case, a plaintiff has a minimum burden of alleging a discriminatory motivation,'" *Vega,* 801 F.3d at 85 (quoting *Littlejohn v. City of New York*, 795 F.3d 297, 310 (2d Cir. 2015), as well as the required adverse employment action element.  *See Bonilla v. City of New York*, 2019 WL 6050757, at **12-13 (S.D.N.Y. Nov. 15, 2019) (discussing Title VII plaintiff's allegations of adverse employment action and finding them sufficient to sustain employment discrimination claim based on race and sex).  Here, Plaintiff contends Goehle's failures to inhibit Grube's sexually oriented behavior directed to Plaintiff as well as Goehle's refusal to permit Plaintiff flex time to avoid Grube's repeated, and unnecessary, *i.e.*, non-work related, visits to her office, and his extended lingering there while permitting such work schedule modifications to Plaintiff's male co-worker, who also complained

about Grube's aberrant sex-related behavior, Dkt. 10-2 at 10-12, demonstrate

Defendant's failures to take corrective action in response to Plaintiff's complaints about

Grube's relentless sexually-motivated efforts to inject himself into Plaintiff's working and

private life, effected a material adverse change in Plaintiff's conditions of employment at

the Agency resulting from Plaintiff's status as a female and Defendant's disparate

treatment, *i.e.*, Defendant's repetitive failures to prevent such efforts by Grube, of her

based on her sex.  *See* Dkt. 1 ¶ 48[19] (alleging a male co-worker was treated more

favorably by Defendant than Plaintiff with respect to Plaintiff's complaints about Grube).

Plaintiff also asserts such disparate treatment based on her sex aggravated Plaintiff's

P.T.S.D., unlike the male co-worker who, according to Plaintiff, did not suffer from

P.T.S.D..  Dkt. 10-2 at 11.

　　　　Admittedly, Plaintiff has not alleged Defendant, as a result of her complaints to

Goehle, subjected her to one of the more commonly recognized forms of adverse

employment actions prohibited by Title VII such as termination or demotion; rather,

Plaintiff contends that Defendant's failure to intervene in response to Plaintiff's series of

complaints throughout the period of Grube's  benighted employment at the Agency,

plausibly allege Plaintiff suffered an adverse employment action by forcing Plaintiff to

endure a material alteration of her employment conditions based on the combination of

Grube's persistent sexually oriented conduct toward Plaintiff and Goehle's failures to

take necessary corrective action.  Dkt. 10-2 at 10-12 (discussing Goehle's unfavorable

responses to Plaintiff's complaints concerning Grube's behavior).  Plaintiff also points to

Goehle's decidedly more favorable response to her male co-worker's complaints about

---

[19]  The court chooses to disregard Plaintiff's apparent typographical error appearing in this paragraph of the Complaint, *i.e.*, that the co-worker "has <u>not</u> been treated differently as a result," as otherwise the allegation would be non-sensical.

Grube as evidencing that as to Plaintiff's complaints Defendant acted or failed to act with a discriminatory motive toward Plaintiff because she was female. *Id.* To support that Plaintiff has plausibly alleged Defendant's actions and inactions with respect to Grube's behavior toward Plaintiff constitute an adverse employment action, Plaintiff relies on the "'atmosphere' of adverse employment" theory, *see* Dkt. 10-2 at 14 (citing caselaw),[20] as enunciated by the Second Circuit in *Phillips v. Bowen*, 278 F.3d 103, 109 (2d Cir. 2002) ("*Phillips*"); *see also Mento v. Potter*, 2012 WL 1908920, at *9 n. 8 (W.D.N.Y. May 25, 2012) (citing *Rooney v. Brown Grp. Retail, Inc.*, 2011 WL 1303361, at *16 (E.D.N.Y. Mar. 31, 2011) (quoting *Phillips*, 278 F.3d at 109)) ("*Rooney*"). "Under this theory, 'a combination of seemingly minor incidents' may satisfy the adverse-action prong, 'once they reach a critical mass.'" *Rooney*, 2011 WL 1303361, at *16 (quoting *Phillips*, 278 F.3d at 109). In order to rely on this theory to demonstrate that as result of an employer's prohibited form of employment discrimination a plaintiff thereby suffered an adverse employment action on account of one's protected status, a plaintiff must "'show that (1) using an objective standard; (2) the <u>total</u> <u>circumstances</u> <u>of</u> <u>her</u> <u>working</u> <u>environment</u> <u>changed</u> <u>to</u> <u>become</u> <u>unreasonably</u> <u>inferior</u> <u>and</u> <u>adverse</u> <u>when</u> <u>compared</u> <u>to</u> <u>a</u> <u>typical</u> <u>or</u> <u>normal,</u> <u>not</u> <u>ideal</u> <u>or</u> <u>model,</u> <u>workplace</u>.'" *Rooney*, 2011 WL 1303361, at *16 (quoting *Phillips*, 278 F.3d at 109). Although the Second Circuit in *Phillips* applied the "atmosphere" theory of adverse employment action to sustain, after trial, a jury verdict on a First Amendment retaliation claim by a public employee plaintiff, courts have

---

[20] Plaintiff asserts such theory in opposition to Defendant's contention that Plaintiff's retaliation claims fail to allege a cognizable form of adverse employment action *see* Dkt. 10-2 at 13-14*;* however, the court finds, and the caselaw holds that such theory also applies to a Title VII disparate treatment claim like the instant action. *See* Discussion, *infra*, at 39-40 (citing cases). The court therefore considers the atmosphere of adverse employment theory as relevant to the First Cause of Action alleging disparate treatment.

extended its applicability to Title VII actions involving other typical forms of employment discrimination such as disparate treatment on account of a plaintiff's race or, as in the instant case, sex. *See Rooney*, 2011 WL 1303361, at *16 n. 11 (citing *Early v. Wyeth Pharms., Inc.*, 603 F.Supp.2d 556, 575 (S.D.N.Y. 2009) (citing cases)) (race); *see also Mento*, 2012 WL 1908920, at *9 n. 8 (sex).

Here, giving the Complaint a liberal reading and assuming the truth of its allegations for the purpose of Defendant's motion as required, *Iqbal,* 566 U.S. at 678, Plaintiff alleges an escalating series of unwanted sexually oriented comments and contacts directed to her by Grube, uninterrupted, despite Plaintiff's numerous requests for intervention, by Defendant, over a one-year period, including repeated phone calls and text messages to Plaintiff, compliments of her appearance and hair styles, at least one physical non-consensual touching of Plaintiff by Grube, seeking Plaintiff's acceptance of Grube's lunch invitations, and inviting Plaintiff to join him on a trip to satisfy his sexual gratification, because of his apparent attraction to Plaintiff as a female who might be responsive to his expressed need for a meaningful sexual relationship with a female like Plaintiff.  These persistent unwanted contacts by Grube, according to Plaintiff's allegations, were reported to Goehle over the nearly one-year period of Grube's employment as manifested by Grube's calling Plaintiff multiple times in one day on her personal telephone number in April 2017, causing Plaintiff to feel "unsafe," which Plaintiff reported to Goehle on May 3, 2017 as having exacerbated her P.T.S.D., Dkt. 1 ¶¶ 24, 25, 27, as well as her repeated complaints and a specific request for a modest accommodation that failed, despite their seriousness, to motivate Goehle to take preventative action against Grube or accommodate Plaintiff's disability.  Goehle's continued indifference to Plaintiff's requests for intervention by him as the Agency's on-

site senior manager is also evidenced by Plaintiff's subsequent allegation that she was
so fearful of Grube's likely and unnecessary appearances in her office that upon
learning her office co-worker was scheduled to be absent on May 9, 2017 she
requested flex time, hoping to gain Goehle's assistance in avoiding Grube's excessive
loitering in Plaintiff's office and instilling fear in Plaintiff while she was alone at that time,
a request Goehle peremptorily denied informing Plaintiff "her comfort level was not a
reason to stay home."  Dkt. 1 ¶¶ 28-29.  Plaintiff's alternative request that Goehle
instruct Grube to "stay away from her and her office" on that occasion, Dkt. 1 ¶ 30, was
also met by Goehle's rejection and, instead, his admonishment that Plaintiff be
"'accommodating'" to Grube and reminding Plaintiff it was her "job to assist her
harasser, Mr. Grube, with administrative duties," as Plaintiff alleges.  Dkt. 1 ¶ 30.

      Given these allegations, the conclusion that Plaintiff's allegations amply satisfy
the elements of the "atmosphere" theory, as established by *Phillips,* to plausibly plead
Plaintiff suffered an adverse employment action, in connection with her disparate
treatment claim based on sexual harassment, cannot be avoided*.*  Assuming their truth,
as required, Plaintiff has plausibly alleged that as a result of Goehle's repeated failure to
intervene to protect Plaintiff against Grube's persistent unwanted advances, including
repetitive unwanted phone calls and continual loitering in Plaintiff's office, which Plaintiff
rightly perceived, based on Grube's constant references to his unsatisfactory personal
sex life, as being sexually motivated, *see* Dkt. 1 ¶¶ 17, 18 (alleging Grube engaged in
"constant [sexual] harassment" of Plaintiff, by, *inter alia*, "regularly mak[ing]
inappropriate comments to Plaintiff regarding his sex life, [and] inappropriate inquiries
about other people's sex lives, including Plaintiff's . . ." which were reported, without
effect, to Plaintiff's supervisors), and directed to her because Grube found her to be an

attractive female, over the course of a year, objectively considered, constitute a "critical mass" of "minor incidents"[21] and therefore that "the total circumstances of her working environment <u>changed</u> to become <u>unreasonably</u> <u>inferior</u> <u>and</u> <u>adverse</u> <u>when</u> <u>compared</u> <u>to</u> <u>a</u> <u>typical</u> <u>or</u> <u>normal</u> <u>or</u> <u>model,</u> <u>workplace.</u>" *Phillips*, 278 F.3d at 109. Certainly, a reasonable female employee who had, like Plaintiff, worked at the Agency for the preceding year (Dkt. 1 ¶ 14) (Plaintiff commenced her employment at the Agency in 2015) without difficulties of a kind unexpectedly created by Grube upon his arrival, would, upon experiencing Grube's constant harassment and Goehle's repeated failures to take corrective action, find her 'new' employment conditions "inferior" to those prevailing before the advent of this untoward scenario. For example, to further illustrate this point and by way of comparison, such managerial inactions by Goehle showing a serial indifference to Plaintiff's plight, despite a steady flow of complaints to Goehle resulting in Plaintiff's understandable emotional distress aggravated by her P.T.S.D., a fact known to Defendant, Dkt. 1 ¶ 15, are in sharp contrast to the "minor" and "remote" infractions alleged by the plaintiff against the defendant employer in *Rooney* found by the court, under *Phillips's* adverse atmosphere test, in that case as not qualifying as an adverse employment action. *See Rooney*, 2011 WL 1303361, at *16 (finding plaintiff's allegations that defendant reneged on a promised raise in pay, failed to sufficiently accommodate plaintiff's need for pregnancy leave, imposed an unfair training duty on plaintiff, and transferred plaintiff as a manager to a less commercially successful store, did not, based on the evidence, meet even the more flexible test for an adverse

---

[21]  While some may view Plaintiff's individual encounters with Grube to be "minor," taken as a whole and in context, as required by *Phillips*, such incidents, apparently motivated by Grube's hurtful interest in Plaintiff, can hardly be characterized as minor. Therefore, application of the *Philips* test for an adverse employment action to Plaintiff's allegations becomes more compelling.

employment action under the "atmosphere" of adverse actions test established by *Phillips*). By contrast, Plaintiff in the instant case has alleged that by virtue of her supervisor's failure to properly respond to the steady drumbeat of Plaintiff's complaints she was forced to continue to endure persistent and escalating sexually motivated misconduct by a co-worker instilling fear and aggravation of a preexisting P.T.S.D. condition, previously known to Defendant, over an extensive period before Defendant finally acted (apparently) against the co-worker, Grube, at the end of May 2017.[22] Regardless of whether Plaintiff in this case can sustain her burden of proof under the *Phillips* atmosphere of adverse action test for establishing an adverse employment action by Defendant in support of her First Cause of Action alleging disparate treatment, the court finds at this pleading stage Plaintiff has plausibly alleged that, taken as a whole, the alleged events support Defendant engaged in an adverse employment action based on Defendant's repeated failure to act in response to Grube's persistent sexual harassment of Plaintiff, amounting to a critical mass of incidents, causing Plaintiff to experience an objectively inferior and adverse change in her conditions of employment compared to a typical or normal, but not ideal, workplace, particularly that which Plaintiff experienced at the Agency prior to Grube's arrival, over an extended period of time following Grube's arrival in May 2016. *See Rooney*, 2011 WL 1303361, at *12 (plaintiff's Title VII claim may be based on a material adverse employment action "tied in any meaningful way to an act or omission of the defendants"). In sum, considering the totality of the facts and circumstances described by Plaintiff's allegations, Plaintiff has plausibly pleaded that Defendant's actions or, more precisely, inactions, together with

---

[22] The precise details leading to Grube's departure from the Agency are not included in the Complaint.

Grube's harassing conduct inflicted on Plaintiff, created a change in Plaintiff's conditions of employment that was "more disruptive than a mere inconvenience," *Vega*, 801 F.3d at 85, constituting an adverse employment action.

Turning to Defendant's contention that Plaintiff's First Claim of disparate treatment also fails because it merely replicates the allegations concerning Grube's harassment and Defendant's failure to take corrective action asserted by Plaintiff in support of Plaintiff's hostile work environment claim set forth in the Second Cause of Action, Dkt. 6 at 13-14, the court finds Defendant's argument lacks merit for several reasons. First, although Defendant maintains Plaintiff's disparate treatment allegations are "duplicative" of Plaintiff's hostile work environment claim and thus subject to dismissal, *id.* (citing *Kilby-Robb v. Spellings*, 522 F.Supp.2d 148, 164 (D.C.Cir. 2007) ("alleged acts of disparate treatment cannot be transformed, without more, into a hostile work environment claims") (citing cases), *aff'd*, 309 Fed.Appx. 422 (D.C.Cir. 2009)), in this case, that Plaintiff's disparate treatment allegations may be in general congruence with those which also support Plaintiff's hostile work environment claim does not require dismissal of either claim. Provided the Plaintiff's allegations also show a severe hostile work environment, in addition to the sexual harassment Defendant allowed Plaintiff to suffer resulting from Grube's prurient sexual interest in Plaintiff, such facts also support a valid disparate treatment claim. The Second Circuit has, contrary to Defendant's supposition, specifically recognized "that [d]isparate treatment prohibited by Title VII also encompasses sexual harassment that results in a 'hostile or abusive work environment.'" *Fitzgerald*, 251 F.3d at 356 (quoting *Meritor Savings Bank FSB v. Vinson*, 477 U.S. 57, 66 (1986)). To prove a hostile work environment claim, plaintiff must establish "the harassment was 'sufficiently severe or pervasive to alter the

44

<u>conditions of</u> [her] employment and create an abusive working environment,' such that a

'reasonable person would find the environment hostile or abusive.'"  *Id.* (quoting *Harris*

*v. Forklift Systems, Inc.*, 510 U.S. 17, 21 (1993)).

> [W]hether an environment is hostile or abusive can be determined only by looking at all the circumstances. These may include the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance. The effect on the employee's psychological well-being is, of course, relevant to determining whether the plaintiff actually found the environment abusive. But while psychological harm, like any other relevant factor, may be taken into account, no single factor is required.

*Fitzgerald*, 251 F.3d at 357 (quoting *Harris*, 510 U.S. at 23).

Harassment sufficient to create a hostile work environment by an employee other

than Plaintiff's supervisor, such as in this case, Grube, may be attributed to the

employer where the employer is guilty of negligence in supervising the workplace.

*Lekettey*, 637 Fed.Appx. at 662 (citing *Vance,* 510 U.S. at 423) ("defendants are liable

only if they were negligent in controlling working conditions" in case of sexual

harassment of plaintiff by non-supervisory employee)). Here, the alleged multiple

incidents of sexually motivated contacts with Plaintiff by Grube over an extensive period

of time are also alleged by Plaintiff to be physically intimidating, Dkt. 1 ¶ 22 ("Grube

inappropriately touched [Plaintiff's] shoulders without her consent"); Dkt. ¶¶ 24, 25

(Grube's multiple calls on Plaintiff's personal phone in April 2017 aggravated Plaintiff's

P.T.S.D.); Dkt. 1 ¶ 27 (Grube's lingering in Plaintiff's office caused Plaintiff to "feel

unsafe and uncomfortable"); Dkt. 1 ¶ 28 (Grube's "presence and sexual harassment

caus[ed] her to experience stress, anxiety and physical manifestations of her P.T.S.D."),

"causing physical manifestations" of Plaintiff's P.T.S.D., thereby damaging Plaintiff's

psychological well-being, and, as a result of Goehle's failure to take corrective action

despite Plaintiff's repeated requests for supervisory interventions, were allowed to continue.  Plaintiff's allegations taken as a whole therefore plausibly allege Defendant consciously allowed Grube's harassment of Plaintiff to become "'sufficiently severe and pervasive to alter the conditions of [her] employment and create an abusive-working environment.'"  *Fitzgerald*, 251 F.3d at 356 (quoting *Harris*, 510 U.S. at 21).  Additionally, the same allegations supporting the Defendant's tolerance of a hostile work environment based on Plaintiff's sex, also support Plaintiff's disparate treatment claim based in part on Defendant's more favorable treatment of Plaintiff's male co-worker.  Thus, Plaintiff's allegations in the instant case plausibly support both Plaintiff's claims for disparate treatment, alleged in the First Cause of Action, and a hostile work environment, as alleged in the Second Cause of Action, and, as such, do not require dismissal as Defendant requests.  *See Fitzgerald*, 251 F.3d at 356.

The out-of-circuit cases relied upon by Defendant are inapposite.  For example, in *Kilby-Robb*, plaintiff's hostile work environment claim was based on the same facts asserted in support of plaintiff's disparate treatment claim predicated on a single allegation of a race-based discriminatory failure to promote as to which the court found on summary judgment that plaintiff had also failed to establish she was qualified for the promotion.  *Kilby-Robb*, 522 F.Supp.2d at 157-58.  In *Kilby-Robb,* plaintiff also failed to show she failed to receive a better job performance evaluation because of her race.  *Id.* at 161-62.  Such facts, although manifestly insufficient to support a hostile work environment claim, pale by comparison to Plaintiff's allegations of Grube's repetitive efforts to importune Plaintiff for sexual reasons and that such efforts were consistently (and inexplicably) ignored by Plaintiff's supervisor, Goehle, despite Plaintiff's continuous pleas for managerial relief.  Such surprising supervisory indifference is further

demonstrated by Goehle's alleged acknowledgment, as Plaintiff alleges, Dkt. 1 ¶ 48,
that Grube's conduct warranted an accommodation to Plaintiff's male co-worker to avoid
contact with Grube.  As the court in *Kilby-Robb* stated, a disparate treatment allegation
"<u>without</u> <u>more</u>" cannot also support a hostile work environment claim.  *Kilby-Robb*, 522
F.Supp.2d at 164.  Here, Plaintiff's hostile work environment allegations amply meet that
requirement.  Accordingly, Defendant's motion directed to this issue, should be
DENIED.

> 2.    <u>Second Cause of Action (Hostile Work Environment)</u>.

Defendant contends that in addition to this claim being dismissible, in part, to the
extent based on pre-April 1, 2017 events involving Plaintiff and Grube because Plaintiff
failed, in respect to such pre-April 2017 events, to timely exhaust her administrative
remedies as a pre-condition to these events being permitted to support Plaintiff's suit in
this court, Plaintiff's Second Cause of Action, alleging she endured a hostile work
environment created by Grube's continued harassment and Goehle's repeated failures
to act against it, as Plaintiff alleges, this claim must be dismissed in its entirety, as a
matter of law, because Plaintiff has alleged Grube also harassed, during the same
period, one of Plaintiff's male co-workers in a manner "similar," Dkt. 1 ¶ 48,[23] to that
which Grube directed to Plaintiff, and that such an allegation negates Plaintiff's
allegations that Grube's sexual harassment of Plaintiff constituted a discriminatory
employment action on account of Plaintiff's sex, a required element for hostile work
environment claim under Title VII.  Dkt. 11 at 8-9 (citing *Brennan v. Metro. Opera Ass'n,
Inc.*, 192 F.3d 310, 318 (2d Cir. 1999); *Reine v. Honeywell Int'l Inc.*, 362 Fed.Appx. 395,

---

[23]  This allegation was specifically included by Plaintiff in support of the Second Cause of Action.  *See*
Dkt. 1 ¶ 60 (realleging Complaint ¶¶ 1-59) in support of Plaintiff's hostile work environment claim.

397 (5th Cir. 2010); *Holman v. Indiana Dep't. of Trans.*, 211 F.3d 399, 403 (7th Cir. 2000)).  More specifically, Defendant points to Plaintiff's statement of facts in Plaintiff's Memorandum in Opposition to Defendant's motion (Dkt. 10-2) that Plaintiff's male co-worker, like Plaintiff, complained to Goehle about Grube's "inappropriate [sexually-oriented] comments and non-consensual touching," Dkt. 11 at 8-9 (quoting Dkt. 10-2 at 3) in support of Plaintiff's contention that Plaintiff was disparately treated by Defendant because of Goehle's flex-time accommodation granted to the male co-worker which enabled him to avoid Grube at work while, at the same time, denying a similar request for flex-time to avoid Grube made by Plaintiff, Dkt. 10-2 at 3, 10-11 (referencing Plaintiff's Exh. A, Dkt. 10 at 00212-213), which denial Plaintiff asserts constitutes an adverse employment action supporting Plaintiff's disparate treatment claim.  Dkt. 10-2 at 12.

Courts recognize that where a plaintiff's alleged disparate treatment claim is not limited to a particular protected class or status under Title VII such as sex, the claim fails as a matter of law because such a claim does not demonstrate plaintiff thereby suffered some form of employment discrimination by the alleged perpetrator.  *See Holman*, 211 F.3d at 403 (citing *Oncale v. Sundown Offshore Services, Inc.*, 523 U.S. 75, 80 (1998)).  As the Seventh Circuit, in explanation, stated with respect to alleged sexual harassment of both male and female employees

> Title VII does not cover the "equal opportunity" or "bisexual" harasser . . . because such a person is not *discriminating* on the basis of sex.  He is not treating one sex better (or worse) than the other; he is treating [harassing] both sexes the same (albeit badly).

*Holman*, 211 F.3d at 403 (italics and parentheses in original).

*See also, Reine*, 362 Fed.Appx. at 397 ("when the [supervisor's] conduct is equally

harsh towards men and women [employees], there is no hostile work environment based on sex") (citing *Butler v. Ysleta Indep. Sch. Dist.* 161 F.3d 263, 270-21) (5th Cir. 1998)); *Brennan*, 192 F.3d at 318 ("[A]n environment which is equally harsh for both men and women . . . does not constitute a hostile working environment under the civil rights statutes.") (citing *Oncale*, 523 U.S. 75 (1998) (the critical issue is whether one sex is subject to more disadvantageous [working] conditions than the other)); *Henson v. City of Dundee*, 682 F.2d 897, 904 (11th Cir. 1982); *but see Hernandez v. Kaisman*, 957 N.Y.S.2d 53, 57 (1st Dep't 2012) (defendant's several sexually explicit e-mails sent to both defendant's male and female employees were "specifically intended to provoke a reaction from the women in the office, and that they [the female employees] were therefore singled out from the male employees" is sufficient to support plaintiff's hostile work environment under the New York State and New York City Human Rights Laws) ("*Hernandez*") (citing *Petrosino v. Bell Atlantic*, 385 F.3d 210, 221 (2d Cir. 2004) ("The mere fact that men and women are both exposed to the same offensive circumstances on the job site . . . does not mean that, as a matter of law, their work conditions are equally harsh.")).  In the instant case, Plaintiff's allegations that Grube's harassment of Plaintiff was "similar," Dkt. 1 ¶ 48, to that experienced by her male co-worker does not include sufficient facts, in comparison to the record on summary judgment in *Hernandez*, upon which to discern whether the sexual harassment Plaintiff experienced was sufficiently alleged to be significantly greater than that Grube directed to the male co-worker to support an inference that Plaintiff's multiple forms of harassment by Grube were in fact greater than those Grube directed to the male co-worker and were primarily the result of her being a female, thus plausibly supporting her hostile work environment claim, despite it being based on conduct "similar" to that which Plaintiff asserted Grube

directed to the male co-worker, thereby making Plaintiff "subject to more disadvantageous [working] conditions than," *Brennan*, 192 F.3d at 318, that experienced by Plaintiff's male co-worker as alleged.[24]  For example, there is no indication in the record that the male co-worker experienced Grube's constant and prolonged lingering in his office, excessive and unnecessary visits during the work-day, unwanted repetitive telephone contacts at work or to his home, compliments on his physical appearance, lunch invitations, and suggested personal trips with Grube for sexual purposes as did Plaintiff.  *See* Dkt. 1 ¶ 48.  In short, such a factual determination sufficient to avoid dismissal of the Second Cause of Action for failure to plead a hostile work environment claim for lack of discriminatory treatment on account of Plaintiff's sex cannot be made based on Plaintiff's single generalized allegation with respect to Grube's harassment of Plaintiff's male co-worker.  *See Petrosino*, 385 F.3d at 221 (objective hostility of a work environment depends on totality of circumstances in sustaining plaintiff's hostile work environment claim, reversing grant of summary judgment to defendant on plaintiff's claim, where sexist material which pervaded the workplace was more directed at female employees than males and was "particularly offensive" to female employees).  *See also Castagna v. Luceno*, 558 Fed.Appx. 19, 21 (2d Cir. 2014) (reversing district court's dismissal of plaintiff's hostile work environment claim because defendant directed harassing comments to both male and female employees but where defendant's "most extreme outbursts were directed at women").  Thus, while it may be that Plaintiff was in fact made to suffer a qualitatively (and quantitatively) greater degree of sexual

---

[24]  In its determination of Defendant's motion, the court has declined to refer to Plaintiff's Exh. A which may contain facts demonstrating the extent of the actual differences between Grube's improper contacts with Plaintiff and the male co-worker, which conceivably could sustain Plaintiff's hostile work environment claim.  *See,* Discussion, *supra*, at 7-9.

harassment amounting to sex-based discrimination than that Grube directed to Plaintiff's male co-worker, sufficient to sustain her hostile work environment claim, a finding cannot be made on this question given the paucity of facts alleged by Plaintiff with respect to the exact nature of the harassment directed to the male co-worker as stated in paragraph 48.  Defendant's motion directed to the Second Cause of Action should therefore be GRANTED on this issue.

      3.   <u>Third and Fifth Causes of Action (Retaliation)</u>.

In addition to Defendant's contention that Plaintiff's retaliation claim are barred, in part, for failure to exhaust, *see*, Discussion, *supra*, at 25-35, in further support of Defendant's motion directed to  Plaintiff's retaliation claims alleged under Title VII (Third Cause of Action) and the Rehabilitation Act (Fifth Cause of Action), Defendant contends Plaintiff has also failed to plausibly allege that at any time during the period covering Plaintiff's contacts with Grube while employed at the Agency, Defendant engaged in any cognizable adverse employment action against Plaintiff constituting an act of prohibited employment discrimination by the Agency as Plaintiff's employer.  Dkt. 6 at 14-15 (citing *Vega*, 801 F.3d at 90).  To plead a claim of retaliation pursuant to 42 U.S.C. § 2000e-3(a) ("§ 2000e-3(a)") requires a plaintiff federal employee to "plausibly allege that: (1) defendant[ ] discriminated – or took an adverse action – against him, (2) 'because' he opposed any unlawful employment practice."  *Id.* (quoting § 2000e-3(a)).  To support a Title VII or Rehabilitation Act-based retaliation claim, the putative adverse employment action must be of such character that a reasonable employee would be dissuaded "'from making or supporting a charge of [employment] discrimination.'"  *Kessler v. Westchester County Dept. of Soc. Services*, 461 F.3d 199, 207 (2d Cir. 2006) (quoting *Burlington Northern,* 548 U.S. at 68) (internal quotation marks and citations omitted)).

Further, the alleged retaliation action must be "'material[ly] adverse,'" that is more than a "'trivial harm[ ].'" *Id.* Internal, non-disruptive communications to management complaining of workplace discrimination in addition to formal charges to agencies such as the EEOC and lawsuits have been held to qualify as protected activity that will support a retaliation claim. *See Summa*, 708 F.3d at 126; *Raniola v. Bratton*, 243 F.3d 610, 624-25 (2d Cir. 2001); *Matima*, 228 F.3d at 78.

In respect to the required element for a viable retaliation claim brought under Title VII, that the plaintiff incurred an adverse employment action, the Second Circuit has recognized that "'there are no bright-line rules,'" *Fincher v. Depository Trust and Clearing House Corp.*, 604 F.3d 712, 721 (2d Cir. 2010) (quoting *Wanamaker v. Columbian Rope Co.*, 108 F.3d 462, 466 (2d Cir. 1997)), thereby obligating the court to engage in a careful case-by-case analysis "'to determine whether the challenged employment action reaches the level of [being materially] 'adverse.'" *Id.* While an employer's failure to investigate a complaint of employment discrimination does not *per se* constitute such a material adverse employment action sufficient to support a Title VII claim of retaliation, *Fincher*, 604 F.3d at 721, where an employee alleges she "suffered harm resulting from, but separate from the disposition [or lack thereof] of, their initial complaints of discrimination," *id.,* 722 (citing *Burlington Northern*, 548 U.S. at 71), such "resulting harm" may nonetheless satisfy the adverse employment action requirement for a viable retaliation claim. *Fincher*, 604 F.3d at 722. Thus, in a case asserting retaliation, like the instant case, where there is no allegation of "classic examples" of an adverse employment action such as discharge, demotion, or a reduction in pay, a plaintiff's alleged "harassment constitutes an adverse employment action" if the plaintiff establishes "that the actions [or inactions] taken by the . . . [employer] created a working

environment unreasonably inferior to what would be considered normal for that position." *Phillips*, 278 F.3d at 109. According to the Second Circuit, "[a] position may become unreasonably inferior if there are repeated and severe incidents of harassment that, taken as a whole, would probably deter an average person from," *id.*, initiating and pursuing a complaint of prohibited employment discrimination. In this case, Plaintiff has alleged she suffered harm, including of a psychological nature, from a constant stream of sexually motivated acts of harassment in which Grube engaged without intervention by the Agency over the course of more than a year which, in turn, inflicted fear upon Plaintiff aggravating her P.T.S.D., a condition known to the Agency, with severe physical manifestations resulting from Grube's harassment and Goehle's indifference despite Plaintiff's repeated complaints and pleas for corrective or ameliorative action over the entire one year period. Thus, here, Plaintiff plausibly alleges her repeated complaints, *see* Dkt. 1 ¶¶ 71, 72, about Grube's continual harassment, *see* Dkt. 1 ¶ 46 (Defendant failed to accommodate Plaintiff [ ] by failing to protect Plaintiff from sexual harassment and hostile work environment by Grube by "failing to address and remedy Plaintiff's complaints of sexual harassment"), representing the subsequent lack of response by Goehle were in retaliation for her initial complaints to  him about Grube which Plaintiff alleges were consistently ignored by Goehle, sufficient to constitute a material adverse employment action. *See Fincher*, 604 F.3d at 722 ("Making the initial complaint allegedly resulted in the separate retaliatory failure to investigate a subsequent complaint of discrimination.") (citing *Rochon*, 438 F.3d at 1220); *see also St. Armour v. Lawrence & Memorial Corp.*, 2015 WL 4744120, at *9 (D.Conn. Sept. 12, 2016) (triable cause of fact presented as to whether defendant's denial of reasonable accommodation of plaintiff's disability was "caused by its motive to retaliate for plaintiff's reporting of

sexual harassment" constituted an adverse employment action sufficient to support plaintiff's Title VII retaliation claim). The court therefore finds that Plaintiff has plausibly pleaded that the cumulative effect of Defendant's failure to intercede, in response to a series of Plaintiff's complaints over the relevant period of time, to protect Plaintiff from the ill-effects of Grube's persistent harassment based on Plaintiff's sex created a working condition of "unreasonable inferiority" at the Agency and thus constituted an adverse employment action sufficient to support Plaintiff's retaliation claims under the Third and Fifth Causes of action. Defendant's motion directed to those claims based on this issue should therefore be DENIED.

      D.    <u>Leave to Replead</u>.

As discussed, with respect to Plaintiff's Second Cause of Action alleging a hostile work environment, Discussion, *supra*, at 47-51, (recommending dismissal based on Grube's alleged sexual harassment of both Plaintiff and Plaintiff's male co-worker, as lacking in discrimination, as a required element for a Title VII claim), in this case, based on sex, the actual underlying facts of Plaintiff's harassment by Grube may conceivably permit Plaintiff to plausibly allege that the extent of Grube's harassment directed to her was materially greater because of her being a female, than was the conduct Grube directed to the male co-worker, albeit also of a sexual nature, so as to support Plaintiff's hostile work environment claim. *See Cortec Industries, Inc. v. Sum Holding L.P.*, 949 F.2d 42, 48 (2d Cir. 1998) (acknowledging "[i]t is the usual practice upon granting a motion to dismiss to allow leave to replead," which is in the district court's discretion, but not required "where a plaintiff is unable to allege any fact sufficient to support its claim . . ..") (internal citations omitted). Here, the allegations in the Complaint suggest Plaintiff may be able to allege sufficient facts to avoid dismissal of Plaintiff's Second Cause of

Action on this unusual basis.  Accordingly, it is recommended that Plaintiff be allowed to file, within 30 days, an amended complaint repleading Plaintiff's Second Cause of Action.

## CONCLUSION

Based on the foregoing, Defendant's motion (Dkt. 5) should be GRANTED in part, and DENIED, in part.  Plaintiff should be permitted to file an amended complaint consistent with this Report and Recommendation within 30 days.  The case should be remitted to the undersigned for further proceedings.

Respectfully submitted,

/s/ *Leslie F. Foschio*
LESLIE G. FOSCHIO
UNITED STATES MAGISTRATE JUDGE

Dated:  December 19, 2019
        Buffalo, New York

Pursuant to 28 U.S.C. §636(b)(1), it is hereby

**ORDERED** that this Report and Recommendation be filed with the Clerk of the Court.

**ANY OBJECTIONS** to this Report and Recommendation must be filed with the Clerk of the Court within fourteen (14) days of service of this Report and Recommendation in accordance with the above statute, Rules 72(b), 6(a) and 6(e) of the Federal Rules of Civil Procedure and Local Rule 72.3.

**Failure to file objections within the specified time or to request an extension of such time waives the right to appeal the District Court's Order.** *Thomas v. Arn*, 474 U.S. 140 (1985); *Small v. Secretary of Health and Human Services*, 892 F.2d 15 (2d Cir. 1989); *Wesolek v. Canadair Limited*, 838 F.2d 55 (2d Cir. 1988).

Let the Clerk send a copy of this Report and Recommendation to the attorneys for the Plaintiff and the Defendant.

SO ORDERED.

/s/ *Leslie F. Foschio*

_____
LESLIE G. FOSCHIO
UNITED STATES MAGISTRATE JUDGE


DATED:     December 19, 2019
           Buffalo, New York