UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

———————————————————

JEDAWN KENNEDY,

      Plaintiff,

v.                                   18-CV-647 (JLS)

DAVID BERNHARDT,

      Defendant.

———————————————————

## DECISION AND ORDER

Plaintiff JeDawn Kennedy commenced this action on June 6, 2018, seeking damages under Title VII of the Civil Rights Act of 1964, codified at 42 U.S.C. § 2000e *et seq.* (hereinafter "Title VII"), and Section 504 of the Rehabilitation Act of 1973, codified 29 U.S.C. §§ 791, 794, and 794a. Dkt. 1. On September 7, 2018, this Court[1] referred this case to United States Magistrate Judge Leslie G. Foschio for all proceedings under 28 U.S.C. § 636(b)(1)(A) and (B). Dkt. 8. Presently before the Court is Judge Foschio's Report and Recommendation ("R&R") (Dkt. 12) addressing Defendant's partial motion to dismiss (Dkt. 5).

For the reasons discussed below, the Court accepts Judge Foschio's recommendations in part and rejects them in part. The partial motion to dismiss is granted in full.

———————————————

[1] Judge Vilardo was originally assigned to this case and made the referral to Magistrate Judge Foschio. On January 5, 2020, this case was reassigned to Judge John L. Sinatra, Jr. Dkt. 14.

## BACKGROUND

Plaintiff JeDawn Kennedy is employed with the United States Department of the Interior as an Administrative Officer in the U.S. Fish and Wildlife Service Lower Great Lakes Fish and Wildlife Conservation Office. Dkt. 1, at 2 ¶ 4. Kennedy began working there in 2015. *Id.* at 3 ¶ 14. In or around May 2016, U.S. Fish and Wildlife Services hired Shawn Grube as a maintenance worker. *Id.* at 3 ¶ 16. Kennedy alleges that around that time, Grube began sexually harassing her, which continued until his resignation in May of 2017. *Id.* at 3 ¶ 17. This harassment included Grube making inappropriate comments to Kennedy about his sex life, lingering in or around Kennedy's office unnecessarily, inviting her to lunch repeatedly despite her denials, and calling and texting Kennedy on her personal phone number regularly. *See generally id.* at 3-4 ¶¶ 17-24. Kennedy complained about Grube's behavior to her supervisors, including that the continued sexual harassment was exacerbating her PTSD. *Id.* at 4-7 ¶¶ 18-19, 21, 24, 25-43. Kennedy alleges that the U.S. Fish and Wildlife Service, particularly her supervisor Michael Goehle, failed to address her complaints and accommodate her disability: among other things, Kennedy claims Defendant failed to remove Grube from his position or to another office space, ensure Grube did not contact Kennedy, or grant Kennedy requested leave or telework days. *Id.* at 7 ¶ 43.

Kennedy initially contacted Defendant's EEO office on May 15, 2017. *Id.* at 3 ¶ 9. She filed a formal administrative complaint of discrimination on August 10,

2017, and on March 8, 2018, Defendant issued a final agency decision dismissing her complaint. *Id.* at 3 ¶¶ 11-12.

Kennedy filed this action on June 6, 2018. Dkt. 1. She asserts five causes of action: disparate treatment and sex discrimination under Title VII (*id.* at 9-10 ¶¶ 49-59); a hostile work environment based on sexual harassment under Title VII (*id.* at 10-12 ¶¶ 60-69); retaliation under Title VII (*id.* at 12-13 ¶¶ 70-76); failure to provide a reasonable accommodation of a disability under the Rehabilitation Act (*id.* at 13-14 ¶¶ 77-86); and retaliation under the Rehabilitation Act (*id.* at 15-16 ¶¶ 87-92). The complaint seeks punitive damages on all causes of action. *Id.* at 16.

On September 6, 2018, Defendant moved to dismiss the complaint in part as follows: pursuant to Federal Rules of Civil Procedure 12(b)(6) and/or 12(f), dismissing and/or striking the demand for punitive damages (all counts), and pursuant to Federal Rules Civil Procedure 12(b)(6), dismissing the complaint in part on the basis of the statute of limitations, failure to exhaust administrative remedies, and failure to state a claim.[2] Dkt. 5; Dkt. 6, at 1. Kennedy responded on October 15, 2018, Dkt. 10, and Defendant replied on October 29, 2018, Dkt. 11.

On December 19, 2019, Judge Foschio issued an R&R on Defendant's motion. *See generally* Dkt. 12. First, Judge Foschio recommended dismissing Kennedy's demand for punitive damages based on their statutory unavailability for Title VII

---

[2] Defendant did not move to dismiss the portions of Kennedy's Title VII claims concerning events that occurred after April 1, 2017. Defendant also did not move to dismiss Kennedy's failure to accommodate claim under the Rehabilitation Act (her Fourth Cause of Action). *See* Dkt. 6.

and Rehabilitation Act claims, as well as Kennedy's voluntary withdrawal of her punitive damages claim. *Id.* at 10; Dkt. 10-2, at 2. As for Kennedy's Title VII disparate treatment claim—the First Cause of Action—Judge Foschio determined that Kennedy had exhausted her administrative remedies, her pre-April 2017 claims were timely on the basis of the continuing violation theory, and she had plausibly alleged a disparate treatment claim. Dkt. 12, at 22, 46-47. Judge Foschio accordingly recommended against dismissal of that claim. *Id.* As for the hostile work environment claim—the Second Cause of Action—Judge Foschio determined that Kennedy had exhausted this claim and recommended denying the motion to dismiss based on failure to exhaust. *Id.* at 25. But Judge Foschio concluded that Kennedy had not plausibly alleged a hostile work environment claim because she acknowledged that Grube harassed both male and female employees. *Id.* at 49-51. Judge Foschio recommended this claim be dismissed, but also recommended that Kennedy be permitted to file an amended complaint to allege the harassment she suffered was greater than that experienced by her male co-worker. *Id.* at 51, 54-55. As for the retaliation claims—Kennedy's Third and Fifth Causes of Action—Judge Foschio recommended granting the motion to dismiss for failure to exhaust administrative remedies.[3] *Id.* at 35.

On January 2, 2020, Defendant filed timely objections to the R&R. Dkt. 13. Defendant argues: the R&R mistakenly applied the continuing violation doctrine to

---

[3] Judge Foschio provided further analysis on these claims and recommended, if this Court were to conclude the claims were properly exhausted, that the motion to dismiss be denied on the merits as to these claims. Dkt. 12, at 51-54.

Kennedy's disparate treatment and retaliation claims; the R&R applied the wrong test for what constitutes an adverse employment action for purposes of a Title VII disparate treatment claim; and the R&R applied the wrong test for what constitutes an adverse action for purposes of a retaliation claim under Title VII and the Rehabilitation Act. *Id.* at 5-17. Kennedy replied on January 23, 2020. Dkt. 18.

## DISCUSSION

### I.    STANDARD OF REVIEW

A district court may accept, reject, or modify recommendations of a magistrate judge. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(3). A district court must conduct a *de novo* review of those portions of a magistrate judge's recommendation to which a party objects. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(3).

This Court has carefully reviewed the R&R, the record in this case, the objections and responses, and the materials submitted by the parties. Based on that *de novo* review, the Court accepts and adopts Judge Foschio's recommendations[4]—except as to the First Cause of Action, the Title VII disparate treatment claim.

---

[4] Because this Court accepts and adopts the recommendations to dismiss Kennedy's retaliation claims based on failure to exhaust administrative remedies and timeliness grounds, the Court need not determine if these claims would survive a motion to dismiss based on failure to state a claim under Rule 12(b)(6).

## II.   MOTION TO DISMISS THE FIRST CAUSE OF ACTION FOR FAILURE TO EXHAUST AND TIMELINESS

### A. Exhaustion Requirements

The timely exhaustion of administrative remedies is required before an individual may bring a suit under Title VII in federal court. *See, e.g., Warren v. Johnson*, No. 11-CV-810S, 2015 WL 1243319, at *2 (W.D.N.Y. Mar. 18, 2015) (citing *Belgrave v. Pena*, 254 F.3d 384, 386 (2d Cir. 2001)).  For a federal employee, timely exhaustion of administrative remedies requires that employee comply with the applicable Equal Employment Opportunity Commission's ("EEOC") regulations. *Wilder v. U.S. Dep't of Veterans Aff.*, 175 F. Supp. 3d 82, 88 (S.D.N.Y. 2016) (quoting *Lucenti v. Potter*, 432 F. Supp. 2d 347, 356 (S.D.N.Y. 2006)). Pursuant to these regulations, prior to filing a formal complaint a federal employee must "initiate contact" with an EEO counselor at his or her agency "within 45 days of the date of the matter alleged to be discriminatory."[5] 29 C.F.R. § 1614.105(a)(1).

---

[5] The EEOC regulations provide that prior to filing a suit, a federal employee must:

> 1) consult with a counselor at the relevant agency's Equal Employment Office ("EEO") within 45 days of the alleged discriminatory act, and, if the matter is not resolved after a mandatory counseling period, (2) file a formal written administrative complaint ("EEO complaint") within 15 days of receipt of the EEO counselor's notice of final interview and right to file a formal complaint ("EEO notice").  The employee may then file a civil action (i) within 90 days of notice of a final agency decision on his or her EEO complaint, or (ii) after 180 days from the filing of the EEO complaint if the agency has not yet rendered a decision.

*Mathirampuzha v. Potter*, 548 F.3d 70, 74-75 (2d Cir. 2008) (citing *Belgrave v. Pena*, 354 F.3d 384, 386 (2d Cir. 2001)).

6

Administrative filing requirements, like the 45-day period, act as a statute of limitations to bar untimely claims unless certain equitable doctrines apply. *See Hardaway v. Hartford Pub. Works Dep't*, 879 F.3d 486, 491 (2d Cir. 2018) (citing *Zipes v. Trans World Airlines Inc.*, 455 U.S. 385, 393 (1982)).

### B. Kennedy's Exhaustion of Administrative Remedies

Kennedy first initiated contact with an EEO counselor on May 15, 2017.  Dkt. 1, at 3 ¶ 9.  She received a final EEO Counseling Report and Notice of Right to file a Formal Complaint of discrimination on July 26, 2017.  *Id.* ¶ 10.  She filed a timely formal complaint with the EEO on August 10, 2017, and on March 8, 2018, the agency issued a Final Agency Decision, which provided Kennedy with the right to file the instant civil action.  *Id.* ¶¶ 11-12.

Defendant argues that because Kennedy's initial contact with a counselor occurred on May 15, 2017, any allegedly discriminatory actions that occurred prior to April 1, 2017—45 days before her contact—are time-barred.  Dkt. 13, at 6-7. Specifically, Defendant argues the alleged discriminatory actions detailed in Kennedy's complaint beginning in May 2016 and continuing through and up until April 1, 2017 are not timely, and that no exception to the statute of limitations applies.  *Id.*  Kennedy maintains that her claims are timely under the continuing violation theory—namely, her May 15, 2017 EEO request for counseling retrospectively encompasses the entire period Kennedy was subjected to Grube's alleged inappropriate contacts, beginning in May 2016. Dkt. 10-2, at 5-8; Dkt. 18, at 5-8.

In the R&R, Judge Foschio acknowledges that Kennedy's claims are subject to the requirement of exhaustion of administrative remedies, including the requirement to seek counseling within 45 days of the discriminatory act. Dkt. 12, at 11-12. However, Judge Foschio concluded that Kennedy could rely on the continuing violation theory to satisfy her exhaustion requirement as to incidents before April 1, 2017, since the allegations alleged facts forming part of a "continuum" of discriminatory sex-based harassment in which the agency "acquiesced." Dkt. 12, at 21-22. This Court disagrees.

## C. Application of the Continuing Violation Theory to Kennedy's Disparate Treatment Claim

The continuing violation exception to the limitations period for Title VII complaints "permits courts to consider claims that the discriminatory acts were part of a continuing policy and practice of prohibited discrimination, where one act of discrimination in furtherance of the ongoing policy occurred within the limitations period." *Bowen-Hooks v. City of New York*, 13 F. Supp. 3d 179, 204 (E.D.N.Y. 2014) (internal quotation marks omitted) (quoting *Lugo v. City of New York*, 518 F.App'x 28, 29 (2d Cir. 2013)). In the Second Circuit, under the continuing violation exception, "if a Title VII plaintiff files an EEOC charge that is timely as to any incident of discrimination in furtherance of an ongoing policy of discrimination, all claims of acts of discrimination under that policy will be timely even if they would be untimely standing alone." *Chin v. Port Auth. of N.Y. & N.J.*, 685 F.3d 135, 155-56 (2d Cir. 2012) (collecting cases).

But the Supreme Court has restricted the scope of this doctrine in federal employment discrimination claims, holding that the continuing violation doctrine "does not apply to discrete acts of discrimination, even if they are 'related to acts alleged in timely filed charges.'" *Pietri v. N.Y.S. Off. of Ct. Admin.*, 936 F. Supp. 2d 120, 134 (E.D.N.Y. 2013) (quoting *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 113 (2002)). Rather, each discrete discriminatory act "starts a new clock for filing charges alleging that act." *Taylor v. City of New York*, 207 F. Supp. 3d 293, 301 (S.D.N.Y. 2016) (quoting *Morgan*, 536 U.S. at 113). The Supreme Court distinguished the continuing violation doctrine in the context of harassment claims under a hostile work environment theory: it is available in this situation because the "unlawful employment practice . . . cannot be said to occur on any particular day. It occurs over a series of days or perhaps years and, in direct contrast to discrete acts, a single act of harassment may not be actionable on its own." *See Dash v. Bd. of Educ. of City Sch. Dist. Of New York*, 238 F. Supp. 3d 375, 384-85 (E.D.N.Y. 2017) (citing *Sotomayor v. City of New York*, 862 F. Supp. 2d 226, 250 (E.D.N.Y. 2012)). The continuing violation doctrine can apply to a hostile work environment claim, since such a claim by its "very nature involves repeated conduct." *Pietri*, 936 F. Supp. 2d at 134 (quoting *Morgan* 536 U.S. at 115); *Semper v. New York Methodist Hosp.*, 786 F. Supp. 2d 566, 580 (E.D.N.Y. 2011) (contrasting the discrete discriminatory acts discussed in *Morgan* with the "archetypical continuing violation": a hostile work environment claim).

9

The Second Circuit has cautioned that while this theory may apply to cases involving specific discriminatory policies or mechanisms, "multiple incidents of discrimination, even similar ones, that are not the result of a discriminatory policy or mechanism do not amount to a continuing violation." *Hongyan Lu v. Chase Inv. Servs. Corp.*, 412 F.App'x 413, 416 (2d Cir. 2011) (citing *Lambert v. Genesee Hosp.*, 10 F.3d 46, 53 (2d Cir. 1993), *abrogated on other grounds by Kasten v. Saint-Gobain Performance Plastics Corp.*, 563 U.S. 1 (2011)); *see also Bowen-Hooks*, 13 F. Supp. 3d at 205 (quoting *Valtchev v. City of New York*, 400 F.App'x 586, 588-89 (2d Cir. 2010)). The continuing violation doctrine "is heavily disfavored in the Second Circuit," and "courts have been loath to apply it absent a showing of compelling circumstances." *Alleva v. N.Y.C. Dep't of Investigation*, 696 F. Supp. 2d 273, 281 (E.D.N.Y. 2010) (quoting *Trinidad v. N.Y.C. Dep't of Corr.*, 423 F. Supp. 2d 151, 165 n.11 (S.D.N.Y. 2006)); *see also Levy v. N.Y.S. Dep't of Env't Conservation*, 297 F. Supp. 3d 297, 316 (N.D.N.Y. 2018) (quoting *De La Peña v. Metro. Life Ins. Co.*, 953 F. Supp. 2d 393, 407 (E.D.N.Y. 2013)) ("As a general rule, courts in the Second Circuit have viewed continuing violation arguments with disfavor.").

### D. Application to Kennedy's Claims

Here, the factual allegations in the Complaint do not support application of the continuing violation doctrine to include pre-April 2017 incidents in support of Kennedy's disparate treatment claim. Kennedy chiefly complains she was "subjected to different terms and conditions of employment due to her sex" as a result of the sexual harassment and discrimination by Grube in the workplace, and

10

Defendant's failure to address this conduct or provide requested accommodations for Kennedy. *See* Dkt. 1, at 8-10 ¶¶ 44-59. Pursuant to *Morgan,* these alleged discriminatory acts are time-barred insofar as they constitute a series of discrete incidents—even if they are "related to acts alleged in timely filed charges," they are "discrete acts of discrimination" that occurred outside the statutory time period. *Bowen-Hooks*, 13 F. Supp. 3d at 205 (citing *Ugactz v. United Parcel Serv., Inc.*, No. 10-CV-1247, 2013 WL 1232355, at *5 (E.D.N.Y. Mar. 26, 2013)); *Morgan*, 536 U.S. at 113. Without further detail as to the timing of these events, or an identifiable discriminatory policy or mechanism,[6] claims of "ongoing and systematic" discrimination do not satisfy the continuing violation exception. *Lynch v. Potter*, No. 1:06-CV-71, 2006 WL 3813593, at *6 (D. Vt. Dec. 27, 2006) (declining to apply the continuing violation exception where plaintiff claimed female workers were treated favorably in several respects in a "series of discrete, yet arguably related, incidents"); *see also Sloth v. Constellation Brands, Inc.*, 883 F. Supp. 2d 359, 370 (W.D.N.Y. 2012) (observing, on a motion to dismiss, that the caselaw "requires that a 'specific discriminatory policy' be shown which amounts to more than a string of allegedly discriminatory acts committed with one motive in mind.").

Alternatively, to the extent Kennedy alleges a claim "composed of a series of separate acts that collectively constitute one 'unlawful employment practice,'" this

---

[6] The oft-cited examples of a specific discriminatory policy or mechanism are a seniority list or employment test. *See, e.g., Sanderson v. New York State Elec.& Gas Corp.*, No. 11-CV-6096T, 2013 WL 1221930, at *6 (W.D.N.Y. Mar. 25, 2013) (citing *Lambert*, 10 F.3d at 53)).

11

supports a hostile work environment claim.   *Taylor*, 207 F. Supp. 3d at 309

(quoting *Harris v. S. Huntington Sch. Dist.*, No. 06-CV-3879 (DGT), 2009 WL

875538, at *10 (E.D.N.Y. Mar. 30, 2009)); *Morgan*, 536 U.S. at 117.   But Kennedy

cannot assert a continuing violation based on a hostile workplace under her first

cause of action that is separate and distinct from the hostile work environment

claim that she has already asserted in her second cause of action.[7]   Kennedy has not

alleged any continuing violation—that is, "specific and related instances of

discrimination . . . permitted . . . to continue unremedied for so long that its inaction

may reasonably be viewed as tantamount to a policy or practice of tolerating such

discrimination"—that is sufficiently distinct from her separate hostile work

environment claim and that makes the pre-April 2017 incidents timely as to the

disparate treatment claim.[8]   *Harris*, 2009 WL 875538, at *10 (quoting *Fitzgerald v.

Henderson*, 251 F.3d 345, 362 (2d Cir. 2001) in a discussion of the continuing

violation theory and a hostile work environment claim); *see E.E.O.C. v. Bloomberg*

---

[7] In contrast to her disparate treatment claim, as Judge Foschio correctly observed, *Morgan* provides a more flexible exhaustion requirement for hostile work environment claims. *See* Dkt. 12, at 23-24. Thus, the hostile work environment claim may properly include acts before April 1, 2017, because acts contributing to the claim occurred within the limitations period. *See Patterson v. Cnty. of Oneida, New York*, 375 F.3d 206, 220 (2d Cir. 2004) (quoting *Morgan*, 536 U.S. at 117); *see also Russo v. N.Y. Presbyterian Hosp.*, 972 F. Supp. 2d 429, 442-43 (E.D.N.Y. 2013) (collecting cases).

[8] Prior discrete acts that are time-barred—and not falling under the continuing violation exception—may still be considered as "background evidence in support of a timely claim." *See, e.g., Bowen-Hooks*, 13 F. Supp. 3d at 205-06 (quoting *Morgan*, 536 U.S. at 113; and then citing *Coger v. Conn. Dep't of Pub. Safety*, 143 F.App'x 372, 374 (2d Cir. 2005)).

*L.P.*, 967 F. Supp. 2d 816, 866 (S.D.N.Y. 2013) (citing *Morgan*, 536 U.S. at 113)

("Indeed, simply alleging that prior acts are related to acts alleged in timely filed

charges is insufficient to invoke the doctrine.").

Based on its *de novo* review, this Court concludes that Kennedy may not rely

on the continuing violation theory to satisfy her exhaustion requirement for the pre-

April 2017 conduct of Grube and the agency's failure to respond to such conduct.

Insofar as Kennedy alleges she was treated differently than her male co-worker

after complaining about Mr. Grube's harassment, or otherwise suffered allegedly

discriminatory actions based on her sex, she is limited to those discrete acts

occurring on or after April 1, 2017. *See Morgan*, 536 U.S. at 113. Thus, since

Kennedy failed to timely exhaust her administrative remedies and the continuing

violation theory does not apply, Kennedy's disparate treatment claims under Title

VII are time-barred to the extent they depend on acts before April 1, 2017.

Defendant's partial motion to dismiss on failure to exhaust and timeliness grounds

is granted as to Kennedy's First Cause of Action.[9]

---

[9] Defendant's first objection also argued that the R&R erred in applying the
continuing violation theory to Kennedy's retaliation claims. Dkt. 13, at 5-9.
Kennedy argues that this portion of the objection is moot, because the R&R
dismisses her retaliation claims, her third and fifth causes of action, and she has
not objected to the R&R. Dkt. 18, at 5. This Court agrees and need not address this
issue.

## II.   MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM

The Court now addresses Defendant's second objection: that the R&R applied the wrong test for what constitutes an adverse employment action for purposes of a Title VII disparate treatment claim.  Dkt. 13, at 9.

### A. Pleading an Adverse Employment Action under Title VII

In order to sustain a claim for discrimination under Title VII, a plaintiff must allege an adverse employment action because of the plaintiff's sex or gender.[10] *Carpenter v. City of Mount Vernon*, 198 F. Supp. 3d 272, 279 (citing *Patane v. Clark*, 508 F.3d 106, 112 (2d Cir. 2007)).  The adverse action or actions must cause a "materially adverse change" in the terms and conditions of employment, more than a "mere inconvenience" or "alteration of job responsibilities." *Id.*; *Terry v. Ashcroft*, 336 F.3d 128, 138 (2d Cir. 2003) (citations omitted).  Standard examples of a materially adverse change include termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices

---

[10] At the motion to dismiss stage, the plaintiff is not required to plead a *prima facie* case under the *McDonnell-Douglas* framework. *See Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 84 (2d Cir. 2015) (citing *Littlejohn v. City of New York*, 795 F.3d 297, 311 (2d Cir. 2015)); *see also Guerra v. Murphy*, 1:15-CV-1168 (LEK/TWD), 2016 WL 7480405, at *4 (N.D.N.Y. Dec. 29, 2016) (discussing the lowered standard of review at the motion to dismiss stage).  Still, the allegations presented "must be plausibly supported by facts [demonstrating] that the plaintiff is a member of a protected class, was qualified, suffered an adverse employment action, and has at least minimal support for the proposition that the employer was motivated by discriminatory intent." *Carpenter*, 198 F. Supp. 3d at 279 (citing *Littlejohn*, 795 F.3d at 311).

14

unique to a particular situation. *Carpenter*, 198 F. Supp. 3d at 279 (citing *Joseph v. Leavitt*, 465 F.3d 87, 90 (2d Cir. 2006)).

As Judge Foschio acknowledged, Kennedy has not alleged Defendant subjected her to one of these "more commonly recognized forms of adverse employment actions." Dkt. 12, at 38. Nevertheless, Judge Foschio determined that Kennedy had plausibly alleged an adverse employment action—that is, she had "plausibly pleaded that Defendant's actions or, more precisely, inactions, together with Grube's harassing conduct inflicted on Plaintiff, created a change in Plaintiff's conditions of employment that was 'more disruptive than a mere convenience.'" *Id.* at 43–44 (citing *Vega*, 801 F.3d at 85). In doing so, Judge Foschio determined that Kennedy's allegations satisfied the elements of the "atmosphere of adverse employment" theory as enunciated by the Second Circuit in *Phillips v. Bowen*, 278 F.3d 103, 109 (2d Cir. 2002). *Id.* at 39. Under this theory, "a combination of seemingly minor incidents may satisfy the adverse-action prong, once they reach a critical mass." *Id.* (internal quotation marks omitted) (quoting *Rooney v. Brown Grp. Retail. Inc.*, No. 08 CV 484(DRH)(AKT), 2011 WL 1303361, at *16 (E.D.N.Y. Mar. 31, 2011)).

In the objections, Defendant argues that Judge Foschio erred in his analysis of this theory: first, the *Phillips* case was decided in the context of a First Amendment retaliation claim, not under Title VII; second, the standard of what constitutes an adverse employment action in the context of a First Amendment retaliation claim is more lenient than that under Title VII; third, the type of theory

15

Judge Foschio adopts is essentially identical to a hostile work environment theory; and fourth, none of the cases cited by Judge Foschio held that sexual harassment alone, without additional impacts on compensation, job duties, etc., was sufficient to satisfy the "atmosphere" test. Dkt. 13, at 13.

### B. "Atmosphere" of Adverse Employment Theory

The Second Circuit has recognized the possibility that a "combination of seemingly minor incidents" may satisfy the "adverse employment action prong" once they reach a "critical mass." *Phillips*, 278 F.3d at 109 (citing *Bernheim v. Litt*, 79 F.3d 318, 325 (2d Cir. 1996)). *Phillips* held that, in order to prove a First Amendment retaliation claim, without a classic example of an adverse employment action, a plaintiff "must show (1) using an objective standard; (2) the total circumstances of her working environment changed to become unreasonably inferior and adverse when compared to a typical or normal, not ideal or model, workplace." *Id.* at 109.

*Phillips* involved appellate review of a jury verdict on a First Amendment retaliation claim. This is a Title VII disparate treatment claim. As other courts in this circuit have noted, the standard for establishing an adverse action in a First Amendment retaliation claim is "more inclusive than the standard of 'materially adverse change in the terms and conditions of employment' which is required in Title VII discrimination claims." *Esar v. JP Morgan Chase Bank N.A.*, 15-CV-382 (NGG) (PK), 2018 WL 2075421, at *7 (E.D.N.Y. May 3, 2018) (quoting *Setelius v. Nat'l Grid Elec. Servs. LLC*, No. 11-CV-5528 (MKB), 2014 WL 4773975, at *8

16

(E.D.N.Y. Sept. 24, 2014)); *Carpenter*, 198 F. Supp. 3d at 282 (because there is a "clear distinction between the standard to be applied to a discrimination claim as compared to the standard for a retaliation claim, the Court cannot lower the standard").  As a result, some courts have rejected this theory and the aggregation of individual acts to show an "adverse employment action" in a Title VII claim. *Cotterell v. Gilmore*, 64 F. Supp. 3d 406, 431 (E.D.N.Y. 2014); *see also Setelius*, 2014 WL 4773975, at \*7 ("The question of whether a plaintiff may aggregate seemingly minor incidents to show an adverse employment action for a Title VII claim has not been addressed by the Second Circuit."); *Kaur v. N.Y.C. Health & Hosp. Corp.*, 688 F. Supp. 2d 317, 332 (S.D.N.Y. 2010) ("It should also be noted that there is no authority for the proposition that this Court should consider the cumulative effect of individually alleged adverse employment actions when evaluating Plaintiff's discrimination claim."); *Figueroa v. New York Health & Hosp. Corp.*, 500 F. Supp. 2d 224, 230 (S.D.N.Y. 2007) ("Plaintiff cites no case law, and this Court is aware of none, which supports the proposition that we are to consider the cumulative effect of individually alleged adverse employment actions when evaluating an intentional discrimination claim."); *Hill v. Rayboy-Brauestein*, 467 F. Supp. 2d 336, 356 n.22 (S.D.N.Y. 2006) ("Although . . . Title VII hostile work environment claims and retaliation claims involve different findings regarding adverse employment actions, the Plaintiff cites no law, and the Court is aware of none, that supports the proposition that the Court can consider the cumulative effect of non-adverse employment actions when evaluating an intentional discrimination claim.").  *But*

*see Mento v. Potter*, No. 08-CV-74S, 2012 WL 1908920, at *9 n.8 (W.D.N.Y. May 25, 2012) (citing *Rooney* and *Phillips* to suggest a plaintiff could support a disparate treatment claim using the "atmosphere" of adverse employment theory). Other courts that have considered the theory—or assumed without deciding that it applies in the Title VII context—often have concluded that the alleged incidents are "simply too minor, or remote to substantiate a finding that the resulting environment was 'unreasonably inferior.'" *Rooney*, 2011 WL 1303361, at *16; *see, e.g., Reckard v. Cnty of Westchester*, 351 F. Supp. 2d 157, 162 (S.D.N.Y. 2004) (even assuming the atmosphere theory was legally cognizable under Title VII for a retaliation claim, the plaintiff's allegations of dissatisfaction with work assignments and a series of other minor inconveniences could not be reasonably construed as producing an unreasonably inferior work environment); *see also Bowen-Hooks*, 13 F. Supp. 3d at 211 n.20, 218 ("Assuming without deciding that the Court may properly aggregate all of the complained of-conduct, and doing so, the Court's conclusion remains the same—the collective impact never resulted in any material change to the terms and conditions of Plaintiff's employment.").

Based on this varied caselaw, the Court declines to apply the "atmosphere" theory of adverse employment action, articulated in *Phillips* in the context of a First Amendment retaliation claim, to Kennedy's Title VII disparate treatment claim. *See Setelius*, 2014 WL 4773975, at *8 ("Because these cases were decided under the more inclusive standard of First Amendment retaliation, the Court declines to apply their 'atmosphere' theory to Plaintiff's claim of discrimination.").

18

And while the Defendant's actions may have resulted in an unpleasant work environment, Kennedy has not connected these actions to "a material loss in pay, promotion, opportunity, prestige, reputation or workplace accomplishments, or some similar actions." *Id.* at *9; *see also Cotterell*, 64 F. Supp. 3d at 432 (quoting *Asanjarani v. City of New York*, No. 09 CIV. 7493(JCF), 2011 WL 4343687, at *11 n.9 (S.D.N.Y. Aug. 18, 2011) (internal quotation marks omitted) ("The difference between a hostile work environment and an atmosphere of adverse employment action eludes the Court.")).   In the context of Title VII discrimination claims, incidents like being yelled at, reprimanded, criticized, *etc.* fail to rise to the level of "materially adverse changes in the terms or conditions" of employment. *Guerra*, 2016 WL 7480405, at *5 (incidents involving the plaintiff being yelled at did not qualify as adverse employment actions because there was "no indication that they led to any tangible consequences related to [plaintiff's] position"); *see also Esar*, 2018 WL 2075421, at *7 (without facts indicating an attendant negative result like demotion or termination, allegations of plaintiff being ordered to undertake embarrassing and inconvenient tasks and being criticized excessively did not constitute an adverse employment action).   Although evidence of the "adverse actions" alleged by Kennedy may support her hostile environment claim, none of them alone qualifies as a discriminatory adverse employment action. *See Asanjarani*, 2011 WL 4343687, at *11, n.9 (declining to consider the "atmosphere" theory where the hostile work environment claim survived summary judgment). Thus, Judge Foschio erred in concluding that the atmosphere theory applied to

Kennedy's claims and recommending that Defendant's motion to dismiss be denied. Kennedy's disparate treatment claim is dismissed.

## III.   LEAVE TO AMEND

While this Court is skeptical of Kennedy's ability to avoid dismissal of her disparate treatment claim—her First Cause of Action—this Court will grant leave to amend as to this claim.

Judge Foschio recommended that Kennedy be allowed to file an amended complaint repleading her hostile work environment claim—the Second Cause of Action. Dkt. 12, at 54-55. Judge Foschio reasoned that "the allegations in the Complaint suggest Plaintiff may be able to allege sufficient facts" to support a hostile work environment claim and show the harassment directed to her was "materially greater because of her being a female, than was the conduct Grube directed to the male co-worker." *Id.* This Court notes that Judge Foschio *recommended* Kennedy be permitted to replead her hostile work environment claim within 30 days, but *did not grant* leave to amend in the R&R. *Id.* at 55. However, Kennedy filed an amended complaint shortly after the R&R was issued on January 17, 2020, prior to this Court reviewing and resolving the objections. *See* Dkt. 17. As a result, this Court orders that *within 30 days of this order*, Kennedy must either (1) file an amended complaint as to the First and Second Causes of Action, consistent with this Decision and Order; or (2) communicate to this Court that she wishes to proceed with her January 17, 2020 amended complaint (Dkt. 17) as it exists.

20

## CONCLUSION

For the reasons stated above and in the R&R, Defendant's partial motion to dismiss (Dkt. 5) is GRANTED as follows.  The motion is GRANTED as to Kennedy's request for punitive damages asserted under all causes of action. The motion to dismiss based on failure to exhaust and timeliness grounds is GRANTED as to Kennedy's First Cause of Action, as discussed above, and as to Kennedy's Third and Fifth Causes of Action for retaliation, for the reasons discussed in Judge Foschio's R&R.  Defendant's motion to dismiss for failure to state a claim is GRANTED as to Kennedy's Second Cause of Action for the reasons discussed in the R&R, and GRANTED as to the First Cause of Action as discussed above.

Consistent with Judge Foschio's R&R and this Decision and Order, Kennedy is granted leave to amend her first two claims.  Accordingly, it is ORDERED that within **30 days of this order,** Kennedy must either (1) file an amended complaint as to both the First and Second Causes of Action, as provided in the R&R and in this Decision and Order; or (2) communicate to this Court that she wishes to proceed with her previously filed amended complaint (Dkt. 17).  The case is referred back to Judge Foschio for further proceedings consistent with the referral order of September 7, 2018, Dkt. 8.

SO ORDERED.

Dated:     December 16, 2020
           Buffalo, New York

_____
JOHN L. SINATRA, JR.
UNITED STATES DISTRICT JUDGE

21